## GOODING VS WATKINS.

### Opinion delivered October 19, 1904.

1. *Indian Lands—Ejectment—Pleading—Complaint.*

In an action of ejectment brought by a citizen of the Chickasaw nation it is not necessary for the complaint to allege that plaintiff intends to allot the land sued for and that with it he is not in possession of more than his allotable share of the tribal lands. These are matters of defense.

2. *Indian Lands—Claims to Possession—Jurisdiction of U. S. Courts.*

The provisions of the Supplemental Agreement (32 Stat. 644) giving to the Commission to the Five Civilized Tribes exclusive jurisdiction to determine controversies as to the right to select lands for allotment does not preclude the U. S. Courts from jurisdiction of actions to recover possession of such lands before allotment.

3. *Instructions.*

Complaint cannot be made that the court's instructions were too general and inapplicable to the facts or for failure to make the instructions more explicit in certain particular when no instructions covering such particulars were requested.

4. *Instructions—Not Covering Issues Presented by Pleadings—Objection Waived.*

In an action of ejectment defendant plead the value of his improvements under the betterment act (Sec. 2644 Mansf. Dig., 1928 Ind. Ter. Stat.) and plaintiff filed no reply. *Held*, that although the answer might be considered as pleading a counter-claim and be admitted by failure to reply, still defendant cannot complain that such questions were not presented to the jury by the court's instructions, when no request for same was made.

5. *Ejectment—Defense—Betterments—Waiver by Failure of Proof and Exceptions.*

In an action of ejectment where the answer plead the value of improvements, but proof thereof was excluded by the court and defendant failed to save an exception thereto, and failed to request instructions thereon, he has waived any error in relation to the exclusion of such defense from the evidence and from the consideration of the jury.

6. *Ejectment—Estoppel—Instructions.*

In an action of ejectment, an instruction that if the plaintiff had, as a beneficiary, accepted the terms of a will under which the defendant claimed the land in controversy, she would be estopped from disputing the provisions of the will was more favorable to the defendant than one requested by the defendant upon the same subject, and hence cannot be complained of, even if improperly given.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Action by Mrs. Emma Watkins against Lem Gooding. Judgment for plaintiff. Defendant appeals. Affirmed.

This is an action of ejectment, brought by the appellee against the appellant to recover the possession of a certain tract of land described in the complaint. The appellee, by her amended complaint, upon which this case was tried, alleges, in substance, that both she and the defendant are Chickasaw Indians;

that her father, Chas. E. Gooding, about the year 1882, segregated the land in controversy from the Chickasaw domain, and put it in cultivation for her, that she might have it for allotment; that he held possession of it for her about five years, to wit, until 1887, at which time, she having married a man by the name of G. W. Watkins, he turned over the possession of the place to her, that she might hold and possess it for her allotment; that she and her husband took possession, he acting as her agent, and rented it, and through her tenants held possession until the year 1899; that after taking possession of the premises she rented them to a man by the name of Weaver for one year, at which time, her parents being aged, she agreed with them that she would donate to them the rents and profits for their subsistence during their lives, and at their death the premises were to be restored to her. With this understanding the premises were turned over to her brother, as the agent of her parents, he being cognizant of the understanding, and agreeing to turn back the premises to plaintiff at their death. In the year 1899 the mother died, the father having died previous thereto. She alleges the value of the land to be $2,000, and prays judgment for its recovery, and damages in the sum of $2,250.

The defendant (appellant), in his answer, denies all of the material allegations of the complaint, and alleges: "That the farm in controversy in this case was purchased by M. T. Gooding about the year 1868 or 1869 from Francis M. Love for $250; that the defendant does not know whether there is any written transfer or deed from said Love to M. T. Gooding, and for that reason cannot file same; that the said M. T. Gooding paid the purchase price, $250, and took possession of the premises in controversy in this suit, and has ever since said date up to 1892 or 1893 been the owner and in the exclusive possession and occupancy of said premises in controversy in this suit; that about the year 1892 or 1893 the defendant herein, Lem Gooding, traded for said place from M. T. Gooding, exchanging for same what is known as the

'Rock Bluff Place,' and that he immediately, about the first of the year 1893, took possession of the premises in controversy in this suit as his own; that the plaintiff in this case well knew that this defendant had become the owner of said place at the time he so traded with his mother, M. T. Gooding, and well knew that this defendant took possession of said farm and improvements about the first of the year 1893; * * * that the defendant's right to the premises in this suit was duly confirmed and specially directed to be carried out by the last will and testament of his mother, M. T. Gooding, executed by the said M. T. Gooding on the 23d day of September, 1896, and duly filed and probated in the Probate Court of Panola county, Chickasaw Nation, Indian Territory, on the 15th day of March, 1899."

*H. E. Eldridge* and *J. C. Thompson,* for appellant.

*Brown & Marsh,* for appellee.

CLAYTON, J. There are twelve errors assigned. As the appellant seems to have abandoned the fifth, seventh, tenth, and eleventh specifications of error, they will not be here set out. The other assignments of error are as follows:

"First. The court erred in overruling defendant's general demurrer to plaintiff's complaint, for reason that said complaint failed to state a cause of action against defendant and to set forth any title to the premises attempted to be described in said amended complaint, and failed to allege facts sufficient to give the court jurisdiction of the subject-matter of this action.

"Second. The court erred in overruling defendant's special demurrer to plaintiff's or appellee's amended complaint, for the reason that said complaint was insufficient in not alleging that the plaintiff had selected the lands or farms attempted to be

described in her said amended complaint as her allotment, and that the same was not in excess of her pro rata share of the lands of the Choctaw and Chickasaw Tribes of Indians, and that the plaintiff was not in possession or holding other lands belonging to the Choctaw and Chickasaw Tribes of Indians as her share of the said lands.

"Third.  Because the court erred in overruling defendant's special demurrer to plaintiff's first amended complaint, as the court was without jurisdiction to decide between plaintiff and defendant as to who was entitled to the lands and improvements attempted to be described in plaintiff's complaint; the right to determine such facts being vested in the Commission to the Five Civilized Tribes.

"Fourth.  Because the court erred in the admission of the testimony of George Watkins, husband of plaintiff, for the reason that the said witness was only competent to testify for his wife as to any business transacted by him as her agent, and the evidence shows that he testified generally over objections and exceptions of defendant."

"Sixth.  The court erred in his charge to the jury in this case in this: that said charge did not submit to the jury the law as applicable to the facts in issue in this case, and said charge failed to give to the jury all the law as applicable to the facts proven and issues joined by pleadings in this case, and that said charge was too general, and tended to confuse the jury as to the real issue in this case; which charge of the court was duly excepted to by the defendant at the time."

"Eighth.  The court erred in refusing to give to the jury special instruction number 2 requested by defendant, which is as ollows: 'You are further instructed that if you believe from the

evidence in this case that M. T. Gooding was the owner of the premises in controversy in this suit, and that said M. T. Gooding in her last will and testament bequeathed said premises in controversy to Lem Gooding, or confirmed the exchange of property prior to her death made by the said M. T. Gooding and defendant, Lem Gooding, and that in such will or testament the plaintiff in this case was made by the said M. T. Gooding one of the beneficiaries, and has accepted the benefits made for her by said will, that she is now estopped to set up any claim or right to the property bequeathed by said will contrary to the terms of such will —you will find a verdict for defendant.'

"Ninth. The court erred in overruling defendant's motion for a new trial, because the verdict of the jury was contrary to law and evidence, and there is no evidence that sustains said verdict; and the court erred in refusing to give to the jury special instruction number 3 requested by defendant, which is as follows: 'The defendant requests the court to instruct the jury to return a verdict in favor of the defendant,' which instruction was refused, to which defendant excepted."

"Twelfth. The court erred in not instructing the jury with reference to improvements made in good faith by defendant, and defendant having set up in his answer that he had been in possession of the premises in controversy since 1893, and that he had made valuable and lasting improvements upon said premises of the value of $1,200; in good faith, as his own, of which the plaintiff had knowledge, and the plaintiff did not deny these allegations in the answer of the defendant, and same were thereby admitted by the plaintiff."

As to the first specification, we think it only necessary to say that we have examined the complaint, and think that, in the absence of a motion to make more certain, it sufficiently states a

cause of action, and therefore the demurrer was properly over-ruled.

The second specification of error assumes that when a Chickasaw Indian brings an action of ejectment it is necessary for him to allege in his complaint, first, that he intends to allot the land sued for; and, second, that he is not possessed of more land than his share of the lands of his tribe, to wit, 360 acres for himself and the same number of acres for his wife and each of his minor children. The nineteenth section of the Supplemental Agreement," as it is called (32 Stat. 643) provides: "It shall be unlawful after ninety days after the date of the final ratification of this agreement for any member of the Choctaw or Chickasaw Tribes to enclose or hold possession of in any manner, by himself or through another, directly or indirectly, more lands· in value than that of three hundred and twenty acres of average allotable lands of the Choctaw and Chickasaw Nations, as provided by the terms of this agreement, either for himself or for his wife, or for each of his minor children if members of said tribes; and any member of said tribes found in such possession of lands, or having the same in any manner·enclosed after the expiration of ninety days after the date of the final ratification of this agreement, shall be deemed guilty of a misdemeanor." Under these provisions of the statute it is unquestionably true that, if the plaintiff held more land in the Chickasaw Nation than provided by the statute, and did not intend to allot this particular tract, she was without title or right of possession, and could not prevail in this suit, because of the outstanding title in the Choctaw or Chickasaw Nation, which would give to any other Chickasaw Indian who had the right to enter upon it and hold the possession of the land as against the plaintiff; but where, as in this case, the plaintiff alleges in her complaint former possession of the land under a claim of title, and that she has been ousted by the defendant, she makes a prima facie case, and is not required to go further by

showing that there is no outstanding title. She is not required to
show her own defect of title or allege other defensive matter.
'If the plaintiff has been in possession of the land, claiming title,
he may rest with that showing as a prima facie case; and will be
entitled to judgment upon it, unless the defendant shows either
a present right in himself or an outstanding title in some third
party upon which he is at liberty to rely." Newell on Ejectment,
§ 9. It thus appears that the matters complained of by the spe-
cial demurrer are merely defensive, and the defendant, if he
desires to avail himself of them, must plead them, and in doing
so must also show either title in himself, or a right to rely on the
outstanding title. He has pleaded title in himself, and this issue
was tried to the jury; but he does not plead the outstanding title,
nor does he show his right to rely on it, if it existed. The right
to rely on the outstanding title would depend on two facts:
First, did he himself have possession of his proportionate share
of the Chickasaw lands (320 acres); and, second, did he possess
himself of this land with an intention of allotting it? And he
should plead it, and not the plaintiff, because, if he did have his
proportionate share of these lands, and did not intend to allot
this particular tract, he, on this proposition, would be without
right or title, except the bare naked possession; and, as the allega-
tion of the complaint is that plaintiff's possession preceded that of
defendant, although plaintiff may have been a mere trespasser,
she would be entitled to judgment in an action of ejectment. In
the case of Hubbard vs Little & Others, 63 Mass. 476, 477, Bige-
low, J., in the opinion, says: "Upon the facts stated in the
report it seems to us this case falls very clearly within the familiar
principle of law that possession of land is sufficient evidence of
seisin to entitle the possessor to hold it against all persons who
cannot show an earlier possession, or higher or better evidence of
title. A bare possession is sometimes called the first degree of
title, and constitutes a valid right to real property, except as
against the true owner. 2 Greenl. Cruise, 123, 126. It follows

that a prior naked possession is a sufficient title against all persons claiming only by a possession subsequently acquired, because, both titles being in their origin of equal validity, that which is prior in point of time must prevail. * * * If A. enter on the land of B. and oust him, A.'s possession, thus acquired, would constitute legal seisin against any one who might enter upon and oust him without right, and A. might well maintain a writ of entry against the wrongdoer, declaring on his own seisin and a disseisin by the tenant. Actual possession of land gives a good title against a stranger having no title. Nor does this violate the well-established rule that a party is to recover upon the strength of his own title only. A possession prior in point of time to that of a tenant who has himself no title, but only a subsequent possession acquired by an ouster of the demandant, is a better title, upon the strength of which a party is entitled to recover. It is a case where the maxim, 'Prior in tempore, potior in jure,' is applicable.'' And this rule of law is elementary. The court below did not err in overruling the special demurrer.

The third specification of error questions the jurisdiction of the court on the ground that in such cases the Commission to the Five Civilized Tribes have exclusive jurisdiction. The twenty-fourth section of the Supplemental Agreement provides: '' Exclusive jurisdiction is hereby conferred upon the Commission to the Five Civilized Tribes to determine, under the direction of the Secretary of the Interior, all matters relating to the allotment of land.'' 32 Stat. 644. Section 69 provides: ''All controversies arising between members as to their right to select particular tracts of land shall be determined by the Commission to the Five Civilized Tribes.'' 32 Stat. 656. These provisions of the statute without doubt confer on the aforesaid commission exclusive jurisdiction to determine all matters relating to the allotment of lands, and all controversies between members of the tribes as to the selection of particular tracts to be allotted by individual

Indians. While it is probably true that the parties to this suit are contesting the right of possession of this tract of land in order to gain the advantage before the commission which that possession would give them, yet no such issue is presented by the pleadings. The suit is for immediate possession of the land. The right to the possession of land before allotment and the selection of lands for allotment are entirely distinct and different. The laws give to an Indian who has heretofore segregated land from the Chickasaw domain and built it into a farm the right to retain possession up to the time of allotment, provided he does not hold more than the approximate share of himself and wife and minor children—which does not appear to have been done in this case. The statute nowhere confers on any officer or tribunal save the courts the power to maintain or preserve for him that right. After allotment, the Indian agent, by direction of the Secretary of the Interior, may put the allottee in possession by removing from the lands all persons objectionable to him; but before that time he is powerless to interfere with the Indian's possession. This power is vested exclusively in the courts; and the judgment of the court in such a case in no wise interferes with or hampers the action of the commission. The judgment of the court only gives him the right and holds him in possession until the commission has acted. Up to that time he holds under the judgment of the court. Afterwards, if the action of the commission should be favorable to him, he holds under the judgment of the commission. And this is such a case, and therefore the court did not err in overruling defendant's demurrer to the original complaint.

The fourth specification of error is that Watkins, the husband of plaintiff, was permitted to testify to matters not pertaining to his duties as agent for his wife. Upon an examination of this testimony we fail to find wherein the witness testified to any material matter except those which fairly came within the scope of his agency.

The sixth specification of error is to the effect that the charge of the court was not applicable to the facts in issue, and was too general in its nature. At the trial there were no exceptions saved to the court's charge on any of the grounds named in this assignment. The only exception saved to the charge, save a general one to the whole charge, was that the court refused to give the three instructions requested by defendant, none of which related in any particular to the matter set up in this assignment. If the charge did not submit to the jury the law applicable to the facts in issue, or failed to give the jury all the law applicable to the facts and issues joined by the pleadings, and was too general, etc., it was the duty of the defendant to request instructions covering the defects in the charge, or at least to have in some way pointed out specifically the matters wherein the charge was defective. The objection made is in the following language: "We want to except to the refusal of the court to give the requested charges 1 and 2 of the defendant, as modified, and to the instructions of the court;" and then follow the refused requested instructions, with specific exceptions saved. It will be observed that the specification complains of no misdirection of the court, but only of nondirection; that is, that the court failed fully to direct the jury on points of law applicable to the facts proved upon the issues joined, without setting out wherein it failed to give the law upon points wherein it was too general, or offering any requested instructions covering them. "It is, then, the general rule of procedure, subject in this country to a few statutory innovations that mere nondirection, partial or total, is not ground for new trial, unless specific instructions, good in point of law and appropriate to the evidence, were requested and refused. A party cannot, by merely excepting to a charge, make it the foundation for an assignment of error that it is indefinite or incomplete." Thompson on Trials, vol. 2, § 2341. In the case of Pennock vs Dialogue, 27 U. S. 15 (2 Pet.) 7 L. Ed. 332, the Supreme Court of the United States say: "It has been said on behalf

of the defendant in error that it (the evidence) called for other and explanatory directions from the court, and that the omission of the court to give them in charge furnishes grounds for reversal. But it is no ground of reversal that the court below omitted to give directions to the jury upon any points of law which might arise in the cause when it was not requested by either party at the trial. It is sufficient for us that the court has given no erroneouss direction. If either party deems any point presented by the evidence to be omitted in the charge, it is competent for such party to require an opinion from the court upon that point. If he does not, it is a waiver of it." In the case of Castle et al vs Bullard, 64 U. S. (23 How.) 189, 16 L. Ed. 429, the same court say: "Instructions given by the court at the trial are entitled to a reasonable interpretation; and, if the proposition as stated is correct, they are not, as a general rule, to be regarded as the subject of error on account of omissions not pointed out by the excepting party.  *  *  *  If the defendants had supposed that the instructions given were either indefinite or not sufficiently comprehensive, they might well have asked that further and more explicit instructions should be given; and, if they had done so, and the prayer had been refused, this objection would be entitled to more weight." In the case of Express Company vs Kountze Bros., 75 U. S. (8 Wall.) 353, 19 L. Ed. 461, that court reiterates this rule in the following language: "As the court was not asked to instruct the jury on any other point, there is not, as the argument for the plaintiff in error seems to suppose, anything else for this court to review. It is the usual practice for the presiding judge at a nisi prius trial in his charge to the jury to take up the facts and circumstances in proof, explain their bearing on the controverted points, and declare what are the legal rights of the parties arising out of them. If the charge does not go far enough, it is the privilege of counsel to call the attention of the court to any question that has been omitted, and to request an instruction upon it, which, if not given, can be brought to the

notice of this court, if an exception is taken. But the mere omission to charge the jury on some one of the points in a case, when it does not appear that the party feeling himself aggrieved made any request of the court on the subject, cannot be assigned for error." (See, also, the numerous authorities cited by Mr. Thompson in footnote 1 to the section above set out).

As the twelfth specification above set out involves in part, at least, this same question, we will proceed in this connection to consider it. The position taken by the appellant upon this specification is that, first, as he had pleaded in his answer to the amended complaint the betterment act (section 2644, Mansf. Dig. [Ind. Ter. St. 1899, § 1928]), and made some proof in relation to it, the court should have submitted it to the jury on proper instructions, although no exceptions were saved except the general one to the charge, and no request for such an instruction was asked; and, second, that his rights under the said act as pleaded by him constituted a counterclaim to the plaintiff's demand for his possession of the premises and damages sustained by him by virtue of the alleged unlawful holding by the defendant, and, as the plaintiff had failed to file a replication denying the allegations as to the improvements put upon the premises by defendant, it stood confessed.

Assuming that the betterment act was well pleaded by the defendant, of which there is some doubt, and that the failure to reply by the plaintiff had the effect claimed by the defendant, still we think, for the reasons set out in our discussion of the sixth specification of error, as well as others to be stated, that the defendant is not now in a position to take advantage of the errors complained of, if errors they be.

The answer to the amended complaint, in pleading the act, specified the improvements, and alleged that they were worth

$1,200. There was no replication filed by plaintiff. During the trial the defendant testified to the improvements as follows: "Q. About how much (land) have you put in state of cultivation since you went there in 1893? A. I suppose I put in about sixty-five or seventy acres. Q. Have you built any houses on the premises in controversy since that time? A. Yes, sir. Q. How many houses have you built there? A. I have built two houses with buildings outside. Q. What was the condition of the premises when you took possession of them in 1893, with reference to improvements? A. There was very poor improvements. The fence was down. Q. What is the condition of the premises now, with reference to improvements? Mr. Bowman: I don't see the relevancy of all this testimony of improvements. The Court: I don't think it is material." There was no objection made or exception saved to this ruling of the court, and there was no other evidence offered, either as to the extent of the improvements or of the value of them. If it be true that a failure to reply was a confession of the alleged counterclaim, it was not a confession of the alleged value of the improvements. This was unascertained and unliquidated. In all judgments by default for the want of an answer, if the damages or the sum sued for be unliquidated, the amount must be established by proof; and as in this case there was no proof offered as to the value of the alleged improvements, there was nothing to submit to the jury upon this branch of the case, unless it was to instruct them to find a mere nominal sum. But, the question having been virtually decided by the court on its refusal to admit the evidence as to the improvements, and the defendant having acquiesced in it by his failure to object or save exceptions, and the further fact that there was no request for a charge on this matter, might not the court well have concluded that the defendant had waived or abandoned it? That he had done so is further evidenced by the fact that in his motion for a new trial it is not set out, nor is any mention of it made. The first we hear of it is in the assignment of

errors in the brief of defendant. If the defendant, through his counsel, intended to rely on the betterment act, as pleaded by him, he has made three fatal errors: First, in not objecting and saving his exception to the exclusion by the court of his testimony relating to it, and following it up by the offer of proof of the value of the improvements; second, by his failure to request instructions on the point, and saving a proper exception to the charge; and, third, by omitting to set it out as a ground for new trial in his motion.

The failure of the court to instruct the jury as to this question, if the defendant were entitled to an instruction, was mere nondirection, and not misdirection, and comes clearly within the rule laid down by the authorities cited in this opinion upon the sixth assignment of error.

The eighth specification of error is as follows: "The court erred in refusing to give to the jury special instruction number 2 requested by defendant, which is as follows: 'You are further instructed that if you believe from the evidence in this case that M. T. Gooding was the owner of the premises in controversy in this suit, and that said M. T. Gooding, in her last will and testament, bequeathed said premises in controversy to Lem Gooding, or confirmed the exchange of property prior to her death, made by the said M. T. Gooding and defendant, Lem Gooding, and that in such will or testament the plaintiff in this case was made by the said M. T. Gooding one of the beneficiaries, and has accepted the benefits made for her by said will, that she is now estopped to set up any claim or right to the property bequeathed by said will contrary to the terms of such will—you will find a verdict for defendant.' " The instruction of the court on this branch of the case was as follows: "The court would further instruct you that if the plaintiff, under the will of M. T. Gooding, was a beneficiary, and that she has accepted the terms of the will,

she would be estopped from disputing the provisions of the will. That is a question, however, as to whether she did accept or not. If she did not, why she has a right to dispute the provisions of the will." The difference between the requested instruction and that given by the court is that the one requested, in addition to the fact that the plaintiff, as a beneficiary under the will, accepted its terms, required the jury to find as a basis of the estoppel that Mrs. M. T. Gooding, the devisor, was the owner of the premises in controversy, while the court's charge only required them to find that plaintiff, as a beneficiary under the will, accepted its terms. If the instruction should have been given at all, the one as given by the court was correct. Besides, it was much more favorable to the defendant than the one requested by him. His requested instruction required him to prove ownership in the devisor; the court's charge did not. Certainly he cannot complain of this.

By the defendant's answer to the amended complaint, he deraigns his title to the premises in controversy through his mother, Mrs. Morning T. Gooding, not as a devisee under the will, but by virtue of a trade of other premises owned at that time by him, known as the "Rock Bluff Place," which he claims to have traded, in the year 1893, to his mother, for the one in controversy. The will was executed in 1896. Mrs. Gooding, the testator, died in 1899, and her will was duly probated. The allegations of the answer as to this proposition are as follows: "The defendant alleges that the farm in controversy in this case was purchased by M. T. Gooding about the year 1868 or 1869 from Francis M. Love for $250; that the defendant does not know whether there is any written transfer or deed from said Love to M. T. Gooding, and for that reason cannot file same; that the said M. T. Gooding paid the purchase price, $250, and took possession of the premises in controversy in this suit, and has ever

since said date up to 1892 or '93 been the owner and in the exclusive possession and occupancy of said premises in controversy in this suit; that about the year 1892 or '93 the defendant herein, Lem Gooding, traded for said place from M. T. Gooding, exchanging for same what is known as the 'Rock Bluff Place,' and that he immediately about the first of the year 1893 took possession of the premises in controversy in this suit as his own; that the plaintiff in this case well knew that this defendant had become the owner of said place at the time he so traded with his mother, M. T. Gooding, and well knew that this defendant took possession of said farm and improvements about the first of the year 1893;   *   *   *   that the defendant's right to the premises in this suit was duly confirmed and specially directed to be carried out by the last will and testament of his mother, M. T. Gooding, executed by the said M. T. Gooding on the 23d day of September, 1896, and duly filed and probated in the probate court of Panola County, Chickasaw Nation, Indian Territory, on the 15th day of March, 1899." The third clause of the will, being the only one relating to this matter, reads as follows: 'Third. I have heretofore, by a suitable conveyance, given to my son, Charles Lemmel Gooding, a farm, which is known as the farm of my late husband on Red River, near Rock Bluff; and subsequently I exchanged with my said son, my place on Red River known as my home place, for the place I had so conveyed him, so that now I own the farm near Rock Bluff, and my said son owns the place I gave him for it." The home place named in the will is the one in controversy. It thus appears from the defendant's pleadings, as well as by the will, that the testatrix, Mrs. Gooding, did not own the premises at the time of the making of the will or at the time of her death, having parted with both title and possession many years before. If this provision of the will should be construed as a confirmation of the trade, and that the defendant was to hold the place in lieu of one that otherwise would have been devised to him, it would make no difference, for the court, whose duty it was

to construe the will, broadly told the jury that if the plaintiff was a beneficiary under the will, and accepted its terms, she would be estopped from disputing its provisions, and that it was a question whether she did or not.    She had testified that she did not.    We see no error of the court in this particular of which the defendant can complain.

The ninth specification of error is that the court erred in refusing to give a peremptory instruction for the defendant.    We think there was sufficient evidence of plaintiff's superior title upon which to submit the case to the jury.

The judgment of the court below is affirmed.

RAYMOND, C. J., and GILL, J., concur.