EXPRESS COMPANY *v.* KOUNTZE BROTHERS.

1. The act of February 22d, 1848, which enacts that the provisions of the act of February 22d, 1847, transferring to the District Courts of the United States, cases of Federal character and jurisdiction begun in the territorial courts of certain Territories of the United States, and then admitted to the Union (none of which, on their admission as States,

---

* Fossat Case, 2 Wallace, 649.

however, as it happened, were attached to any judicial circuits of the United States), shall apply to all cases which may be pending in the Supreme or other Superior Courts of *any* Territory of the United States which may be admitted as a State at the time of its admission, is to be construed so as to transfer the cases into District Courts of the United States, if, on admission, the State did not form part of a judicial circuit, but if attached to such a circuit, then into the Circuit Court.

2. An averment in the declaration, that the plaintiffs were a firm of natural persons, associated for the purpose of carrying on the banking business in Omaha, Nebraska Territory (a place which, at the time of the suit brought, was remote from the great centres of trade and commerce), and had been for a period of eighteen months engaged in that business, at that place, is equivalent to saying that they had their domicile there, and is a sufficient averment of citizenship.

3. An averment that the defendant is a foreign corporation, formed under and created by the laws of the State of New York, is a sufficient averment that the defendant is a citizen of New York.

4. A common carrier of merchandise is responsible for actual negligence, even admitting his receipt to be legally sufficient to restrict his common law liability. And he is chargeable with actual negligence, unless he exercise the care and prudence of a prudent man in his own affairs.

5. A simple omission of a court to charge the jury as fully on some one of the points of a case about which it is charging generally, as a party alleges on error that the court ought to have charged, cannot be assigned for error, when it does not appear that the party himself made any request of the court to charge in the form now asserted to have been the proper one.

ERROR to the Circuit Court for the District of Nebraska. The case, which involved two distinct subjects, one of jurisdiction and the other of merits, was thus:

I. *As to the matter of jurisdiction.* This again involved two different points.

An act of 1847* provided, that in all cases of Federal character and jurisdiction commenced in the Superior Courts of the Territory of Florida, and the Court of Appeals of that Territory, after the 3d of March, 1845, "in which judgments or decrees were rendered, or which are claimed to have been since pending there, in the records and proceedings thereof, and the judgment and decrees therein, are hereby transferred to the District Court of the United States for the District of Florida." The provisions of the act were made

---

* February 22d, 1847, § 8; 9 Stat. at Large, 130.

at the time applicable to cases pending in the then new State of Michigan, and by an act of 1848,* were afterwards extended to courts of the then new State of Iowa. Neither Florida, Michigan, nor Iowa were, at the time of becoming States, attached to any judicial circuit of the United States.

This last act, the act of 1848, declares that the provisions of the act of 1847 shall apply to all cases which may be pending in the Supréme, or other Superior Court of *any* Territory of the United States which may be admitted as a State, at the time of its admission. With these acts in force, Kountze Brothers brought suit in a District Court of the Territory of Nebraska against the United States Express Company. The declaration described the plaintiffs as "an association of persons not incorporated, formed for the purpose of carrying on the banking business at Omaha, Nebraska, and who were, at the time the cause of action arose, and still were engaged in said business at Omaha," and described the defendants as "a foreign corporation formed under and created by the laws of the State of New York."

The answer and a replication being filed prior to the 3d of July, 1867, the proceedings while thus in *fieri*, were on that day—Nebraska having now become a State of the Union—brought and filed by the plaintiffs in the *Circuit Court* of the United States for the District of Nebraska.

Nebraska, as a Territory, was, at the time of her admission to the Union, *attached to the eighth judicial circuit of the United States*.

II. *As to the merits.* The suit was brought to recover from the Express Company, as common carriers, the value of certain gold dust which they had undertaken to forward from Omaha to Philadelphia.

The dust had been delivered to the company, for the transportation just mentioned, on the 29th of September, 1864, and was one of regular series of consignments, running through a term of more than eighteen months. The receipt given for it was the ordinary receipt of the company.

---

* February 22d, 1848, § 2; 9 Ib. 211–12.

It set forth, that it had been expressly agreed, that the company should not be liable "for any loss or damage by fire, the acts of God, or *the enemies of the government;* mobs, riots, insurrections, or pirates, or from *any of the dangers incident to a time of war.*"

There were two routes used by the company to convey their property. One was across the State of Iowa, and the other to St. Joseph, Missouri, and thence across that State by the Hannibal Railroad. The latter route was the most expeditious, but the former was the safest, as the rebellion was in progress at this time, and Missouri, although adhering to the Union, was infested with predatory rebels, as well as with more regular bodies of the Confederate troops.

The gold dust was conveyed by the St. Joseph route, and the company was robbed of it, by a band of armed men, while it was in transit across the State.

On the trial, the plaintiffs testified that they gave notice to the agent of the company not to send their gold dust by the St. Joseph route; though there was testimony, also, that tended to prove that this notice was not until after the robbery of this particular gold.

No exception was taken, on the trial, to the admission or rejection of evidence, and the only subject for review here was the charge given by the court to the jury. The court instructed the jury only on a single point, that of negligence. The jury were told substantially that, although the contract was legally sufficient to restrict the liability of the defendant as a common carrier, yet, if the defendant was guilty of actual negligence, it was responsible. And that it was chargeable with negligence, unless it exercised the care and prudence of a prudent man in his own affairs. The Express Company requested the court to charge the jury that it was not liable, unless grossly negligent.

The jury having found for the plaintiffs, and the judgment having gone accordingly, the present writ of error was taken.

The case being thus, here the grounds asserted for reversal were:

I. As to jurisdiction.

1. Because there was no statutory authority for removal into the Circuit Court.

2. Because there was no such averments of citizenship as to bring the case within the provision of the Constitution and Judiciary Act of 1789. [This second point, however, not being taken in the court below.]

II. Because the court had not charged that the company ·was not liable, unless grossly negligent.

*Mr. Ashton, for the Express Company, plaintiff in error:*

I. *As to the jurisdiction.* There was no authority for the transfer of this case into the *Circuit Court* of the United States for the District of Nebraska. The case, if it fell within the provision at all, went to the *District Court,* and not to the *Circuit Court.* The act of 1847 is explicit that the cases in the enumerated courts of the Territory of Florida should be transferred to the *District Court* of the United States; and, if the act of February, 1848, authorized the transfer of this case into any Federal court, it required its transfer to the *District Court* of Nebraska. There would seem to be no answer to this suggestion whatever.

Again: It is settled that where a plaintiff asserts a right to prosecute a suit in the Circuit Court of the United States, on the ground of the citizenship of the parties, the pleadings must distinctly aver and show that they are citizens of different States, and that one of them is a citizen of the State where the suit is brought; and, if he omit to do this, and a judgment is rendered in his favor, by the Circuit Court, this court, on a writ of error or appeal, will reverse the judgment for want of jurisdiction in the court below.*

This doctrine is equally applicable to cases instituted in State courts, which may be the subjects of removal into the Circuit Court, on the ground of the citizenship of the parties.†

---

* Bingham *v.* Cabot, 3 Dallas, 382; Capron *v.* Van Noorden, 2 Cranch, 126; Montalet *v.* Murray, 4 Id. 46; Morgan *v.* Callender, 4 Id. 370; Wallen *v.* Williams, 7 Id. 602; Dred Scott *v.* Sandford, 19 Howard, 401.

† Conkling, Treatise, 4 ed. 155; Ward *v.* Arredondo, 1 Paine, 410.

The declaration describes the plaintiffs as " an association of persons carrying on the banking business in Omaha, Nebraska." " This court does not hold," says Curtis, J., " that either a voluntary association of persons, or an association into a body politic, created by law, is a citizen of a State within the meaning of the Constitution."[*]    Moreover, where the jurisdiction of the Circuit Court depends on the character of the parties, and such party, either plaintiff or defendant, consists of a number of individuals, each one must be competent to sue in the courts of the United States, or jurisdiction cannot be entertained.[†]

The averments of the petition referred to are not equivalent to an averment that the plaintiffs are citizens of Nebraska.[‡]    They may have been aliens, or citizens of New York, or some other State, doing business at Omaha.    No legal inference that they were citizens of Nebraska can be drawn from any of the facts averred.

The description of the Express Company as a " foreign corporation, formed under and created by the laws of the State of New York," is not a sufficient or proper description of the defendants to bring them within the jurisdiction of the Circuit Court.[§]

The petition fails to aver that the corporation defendant has its principal place of business in New York, and is therefore defective, under the opinion of Chief Justice Taney in the last case in *Covington Drawbridge Co.* v. *Shepherd.*[||]

II. *The merits.*    The property was delivered, accepted, and carried under and subject to the provisions of a *special contract,* and not under or in pursuance of a general undertaking on the part of the defendants to transport the property as common carriers.    There can be no doubt, at this

---

[*] Lafayette Insurance Company *v.* French, 18 Howard, 405 ; and see Paul *v.* Virginia, 8 Wallace, 168.

[†] Strawbridge *v.* Curtiss, 3 Cranch, 267.

[‡] Brown *v.* Keene, 8 Peters, 112; Piquignot *v.* Pennsylvania Railroad Company, 16 Howard, 104.

[§] Marshall *v.* Baltimore & Ohio Railroad Co., 16 Howard, 314; Lafayette Insurance Co. *v.* French, 18 Id. 404.

[||] 20 Id. 227.

time, notwithstanding that able writers once thought other wise, that such a receipt, accepted under such circumstances, constitutes an *agreement* between the company and the owners of the property, and has the same effect in law as if signed by both parties.*

The defendants having been thus shown to have been *special carriers* of the property in question, the court should have instructed the jury that the plaintiffs could not recover in this action.

It is a question of law for the court, and not of fact for the jury, whether facts proved or admitted constitute a special contract or not.†

Whenever a special contract exists, changing the character of a carrier from a common to a private carrier, the latter cannot be declared against as a common carrier, but the action must be on a special contract, or for a breach of duty arising out of such contract; and if the declaration in such case set forth the general liability of the defendants as a common carrier, the variance is fatal.‡

The declaration here was upon a supposed general undertaking as common carriers.

The court should have instructed the jury, that by the terms of this contract, there could be no recovery against the defendants, unless they were guilty of gross negligence or misfeasance in regard to this property, and the loss was occasioned thereby.

The terms of the contract leave no doubt as to the meaning of the parties. And we contend that effect should be given to their stipulation, at least to the extent of relieving the carriers from liability for every degree of negligence, except that which has been termed gross or guilty negligence, or which amounts to positive *misfeasance.*

---

\* York Company *v.* Central Railroad, 3 Wallace, 111.

† Kimball *v.* Rutland & Burlington Railroad Company, 26 Vermont, 248.

‡ Kimball *v.* Rutland & Burlington Railroad Company, 26 Vermont, 248; Shaw *v.* York & N. M. Railway Company, 13 Adolphus & Ellis (N. S.), 347; Crouch *v.* London & N. W. Railroad Company, 7 Exchequer, 705.

This court has never decided, we suppose, that a stipulation against losses from negligence, short of misfeasance or misconduct, cannot be made by a carrier of merchandise. In the case of *York Company* v. *Central Railroad** the question did not arise, but there Field, J., would seem to speak of *misconduct* of the carrier as a thing alone against which no contract could be maintained.

The spirit of the later adjudications, in those States where the subject has been most carefully considered, is not opposed to any agreement or arrangement between parties to such a transaction, which shall relieve the carrier of *property* from responsibility for negligence which does not amount to positive misconduct or fraud, misfeasance, malfeasance, or gross negligence, in respect to the subject committed to his care.†

The doctrine of Pollock, C. B., in *Beal* v. *South Devon Railway Company*,‡ that " a contract to which a person has signed his name is, *quoad* him, a reasonable contract; that he has agreed to it, and therefore has no right to complain of it," is a doctrine which commends itself to good sense.

Mr. Justice DAVIS delivered the opinion of the court.

Before proceeding to consider the merits of this controversy, it is necessary to dispose of the point of jurisdiction which is raised.

It is urged that the Circuit Court had no jurisdiction over the cause, because there was no authority to transfer it. This depends on the construction of the acts of Congress relating to the subject.

On the admission of a new State into the Union, it be-

---

\* 3 Wallace, 113.

† Dorr *v.* New Jersey Steam Navigation Company, 1 Kernan, 485; Wells *v.* Steam Navigation Company, 4 Selden, 381 ; Wells *v.* New York Central Railroad, 24 New York, 181 ; Smith *v.* Central Railroad Company, Ib. 222; Bissell *v.* The same, 25 Id. 442 ; Moore *v.* Evans, 14 Barbour, 528 ; Brown *v.* Eastern Railroad Company, 11 Cushing, 97 ; Buckland *v.* Adams' Express Company, 97 Massachusetts, 124 ; Kallman *v.* United States Express Company, 3 Kansas, 210 ; Prentice *v.* Decker, 49 Barbour, 21.

‡ 5 Hurlstone & Norman, 883.

comes necessary to provide not only for the judgments and decrees of the Territorial courts, but also for their unfinished business. In recognition of this necessity Congress, after Florida became a State, passed an act providing, among other things, that all cases of Federal character and jurisdiction pending in the courts of the Territory be transferred to the District-Court of the United States for the District of Florida. The provisions of this act were made applicable, at the time of its passage, to cases pending in the courts of the late Territory of Michigan, and were afterwards extended to the courts of the late Territory of Iowa. Congress, in making this provision for the changed condition of Iowa, thought proper in the same act to adopt a permanent system on this subject, and extended the provisions of the original and supplementary acts to cases from all Territories which should afterwards be formed into States.

It is contended, if this cause were transferable at all, it went, under these acts of Congress, to the District Court, and not to the Circuit Court. This would have been true if Nebraska had not at the time of the transfer occupied a different judicial status from that occupied by Florida, Michigan, or Iowa, when these laws were passed. These States were not then a part of any one of the judicial circuits, while Nebraska, when this cause was removed, was attached to the eighth circuit. Their District Courts had general Circuit Court powers, while the District Court in Nebraska had only the ordinary jurisdiction properly belonging to the District Courts of the country. If Nebraska had not at the time of the transfer formed a part of a judicial circuit, her District Court would, by virtue of the laws above recited, have been clothed with the general powers of a Circuit Court, and could have taken cognizance of this cause, and it would, in the purview of these laws, have been rightfully transferable to it. To construe these laws so as to limit the right of transfer to the District Court alone, without regard to the powers of that court, would defeat the very object Congress had in view. That object is made plain enough by the legislation relating to this subject. It was, on the admission

of a new State, to transfer pending civil cases of a Federal character from the Territorial courts into the District Court, if the State did not form part of a judicial circuit; because in such a case the District Court was invested with Circuit Court powers. But if the State were attached to a circuit, then, as the District Court did not possess this jurisdiction, the cause was transferable to the Circuit Court. To adopt any other construction would render the provisions for the transfer of causes, in case a new State on its admission were attached to a circuit, nugatory.

It is said, if cases of a Federal character were properly transferable to the Circuit Court, this was not one of them; because it does not appear that the suit was between citizens of different States. It is true there is no direct averment to this effect, but it is the necessary consequence of the facts stated in the pleadings, that the parties to the suit were citizens of different States. The averment that the plaintiffs were a firm of natural persons, associated together for the purpose of carrying on the banking business in Omaha, and had been for a period of eighteen months engaged in said business at said place, is equivalent to saying they had their domicile there. In this country people usually live and have their citizenship in the place where they do business. Especially is this true of persons engaged in a business requiring capital, and involving risk, at a point which is remote from the great centres of trade and commerce.

The citizenship of the defendant is clearly enough averred. It is alleged that the United States Express Company, the defendant in the suit, is a foreign corporation formed under and created by the laws of the State of New York. The obvious meaning of this allegation is that the defendant is a citizen of the State of New York. The course of proceeding in the court below shows that the parties to the suit recognized it as being of Federal jurisdiction, and it could only be so (as there was no Federal question involved), on the ground that the plaintiffs and defendant were citizens of different States. If the parties had thought otherwise, after the cause reached the Circuit Court, the point would have

been taken, and an effort made at least to test the jurisdictional question. The record shows that nothing of the sort was attempted.

There remains to be considered the merits of this case, so far as they are presented in the bill of exceptions.

The only subject for review here is the charge given by the court to the jury. The court instructed the jury only on a single point—that of negligence. The jury were told substantially that, although the contract was legally sufficient to restrict the liability of the defendant as a common carrier, yet, if the defendant was guilty of actual negligence, it was responsible. And that it was chargeable with negligence, unless it exercised the care and prudence of a prudent man in his own affairs. The defendant requested the court to charge the jury that it was not liable unless grossly negligent.

To understand what are the rights of the parties to this suit, so far as the court was asked concerning them, it is necessary to see what were the facts proved in the case. It appears that the particular lot of gold dust, which is the subject of this controversy, was confided to the express company for transportation to Philadelphia, on the 29th of September, 1864, and that it was one of a series of shipments of the same kind, running through a period of eighteen months or more. The receipt given for the packages was not different from the ordinary receipts of the company, and was doubtless intended to limit the liability of the company as common carriers. There were two routes employed by the express company to convey their property—one across the State of Iowa, and the other to St. Joseph, Missouri, and thence across that State by the Hannibal Railroad. The latter was the most expeditious route, but the former the safest, as Missouri, although at the time adhering to the Union, was in a disturbed and unsettled condition. The property in dispute was conveyed by the St. Joseph route, and was robbed while in transit across the State by a band of armed men. Under the circumstances in which the country was then placed, no prudent man, in the management of his own

affairs, would have sent his property by the Missouri route, if another route were open to him.   It seems that·the·plaintiffs acted on this idea, for one of them testifies that he notified the agent of the company not to send their gold dust by the St. Joseph route. . If this·testimony be true, it is hard to conceive a grosser case of negligence, for here were two· routes—the one safe and the other hazardous—and yet the express company, in defiance of the wishes of the ·owner of the property, reject the safe, and adopt the hazardous route. Carriers of goods cannot escape responsibility if they behave in this manner, for they are required to follow the instructions given by the owner of property concerning its transportation, whenever practicable.*   In this case it was practicable to obey the instruction given, by the plaintiffs, and the defendant furnishes no excuse for not obeying it.

It is said that the weight of the evidence is against the. statement of the plaintiffs, that they directed their goods sent by the Iowa route.   Conceding this to be true, it cannot be corrected here.   It was a proper matter to be considered by the court below, on a motion for a new trial, but the granting or refusing such motions are not subject to be reviewed in this court.

If the evidence in the case tended to prove the defendant guilty of actual negligence, then the court below were justified in basing upon it an instruction to the jury. That it did tend to prove it is clear, and the charge of the court on the subject correctly stated the law to the jury.

As the court was not asked to instruct the jury on any other point, there is not, as the argument for the plaintiff in error seems to . suppose, anything else for this court to review.   It is the usual practice for the presiding judge at a nisi prius trial, in his charge to the jury, to take up the facts and circumstances in proof, explain their bearing on the controverted points, and declare what are the legal rights of the parties arising out of them.   If the charge does not go·far enough, it is the privilege of counsel to call the attention of

---

* Redfield on Carriers, § 34.

the court to any question that has been omitted, and to request an instruction upon it, which, if not given, can be brought to the notice of this court, if an exception is taken. But the mere omission to charge the jury on some one of the points in a case, when it does not appear that the party feeling himself aggrieved made any request of the court on the subject, cannot be assigned for error.

JUDGMENT AFFIRMED.