### STEPHENSON v. ATLANTIC TERRA COTTA CO.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1915.)

#### No. 1343.

1. CONTRACTS ⬅349, 353—ACTIONS FOR BREACH—EXCLUSION OF EVIDENCE—INSTRUCTIONS.

 The charge of the trial court in an action on contract, and its rulings in excluding testimony offered, considered, and *held* without error.

 [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 93, 1096, 1781, 1784, 1788–1798, 1809, 1811–1814, 1817, 1818, 1829–1844; Dec. Dig. ⬅ 349, 353.]

2. TRIAL ⬅255—INSTRUCTIONS—FAILURE TO SUBMIT ALL THE ISSUES—WAIVER OF OBJECTION.

 The charge of a court is not subject to exception because it does not instruct the jury on a point in issue, where such instruction was not requested by either party.

 [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 627–641; Dec. Dig. ⬅255.]

3. TRIAL ⬅295—INSTRUCTIONS—CONSTRUCTION.

 Where a particular portion of a charge is excepted to, it must be construed in connection with the other parts of the same.

 [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 707–717; Dec. Dig. ⬅295.]

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; Benjamin F. Keller, Judge.

Action at law by the Atlantic Terra Cotta Company against Samuel Stephenson. Judgment for plaintiff, and defendant brings error. Affirmed.

T. S. Clark, of Charleston, W. Va., for plaintiff in error.
Buckner Clay, of Charleston, W. Va., for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. This is an action of assumpsit, brought by the Atlantic Terra Cotta Company, a corporation of New York, against Samuel Stephenson, to recover the sum of $5,000 with interest, alleged to be due upon a contract. There was a trial before a jury, which resulted in a verdict and judgment in favor of

the defendant in error for the sum, of $5,000, with interest from October 24, 1910, and costs. The case comes before us on a writ of error. The plaintiff in error will hereinafter be referred to as defendant, and the defendant in error as plaintiff; such being the respective positions occupied by the parties in the court below.

Many of the facts in this case are undisputed. In 1909 the defendant, Stephenson, and C. M. Alderson entered into a contract with the Moore Construction Company for the construction of a large office building in the city of Charleston. On November 22d of the same year the plaintiff, the Atlantic Terra Cotta Company, a corporation engaged in the manufacture and sale of terra cotta, having its principal office in the city of New York, entered into a contract with the Moore Construction Company for the manufacture and delivery of terra cotta for the building, according to the plans and specifications prepared by the architects. The contract provided for the delivery of the terra cotta f. o. b. plant, with freight allowed to Charleston. The contract price was $18,190, which was to be paid on or before the 20th of each and every month for material shipped during the preceding month to the amount of 85 per cent. of the value of the work; the final payment to be made within 30 days after the final shipment of the material. There were three other contracts for small amounts of additional material. These supplemental contracts brought the total price for all work and material up to $19,584.

The plaintiff began the manufacture of material immediately, and completed a considerable portion of it in the early spring; but shipment was delayed because the Moore Construction Company was not ready to receive it. Beginning with June 17, 1910, shipments were made from time to time by the plaintiff as the same were required. On October 17, 1910, the date of the agreement which forms the basis of this suit, there had been shipped material of the value of $14,530, being all the material but four carloads, of the value of $5,054. There had become due under the contract from month to month the sum of $9,418, and there would have been due on October 20th, three days later, the sum of $2,932.50. Up to this time the Construction Company had only paid $2,500, which was paid on September 8th, and had been allowed freight charges to the amount of $693.65.

There was considerable correspondence between the parties, and it developed from this correspondence that the failure of the Moore Construction Company to make the payments as they became due was due to the fact that the owners, Alderson and Stephenson, had defaulted in their payments to the Construction Company. Under date of September 19, 1910, C. M. Alderson wrote a letter to the plaintiff explaining the delay, and in this letter he says:

"Being one of the parties interested in the construction of the Alderson-Stephenson Building in this city, by the Moore Construction Company, I am advised that you have been urging the Moore Construction Company for remittances, and as a matter of fairness to that company I beg to say that the owners of the building have been delayed in making some of their payments to the Construction Company, and this delay has prevented the company from making prompt remittances to you."

The Moore Construction Company failed to make further payments, and on October 13th plaintiff sent the following night letter:

"In view of delay of owners in making payments to you, situation of your account is extremely unsatisfactory. Under present conditions we should have ordered payments and some detailed statement as to state of operation and assurance for future. Please reply by same."

Later a meeting was arranged between the plaintiff and the Moore Construction Company for October 17th, at Charleston, and W. H. Powell, president of the Terra Cotta Company, came to Charleston on that day and met W. E. Moore, president of the Construction Company, and the two together went to see the defendant, Stephenson. With reference to this meeting, Mr. Powell says:

"I met Mr. Moore, and went to lunch with him, and I told him we were very much dissatisfied with the condition of the account; that we did not propose to go ahead and send them any more terra cotta until we were paid for the terra cotta that had been delivered, payments for which were long overdue, and until we had satisfactory assurance as to payment for the terra cotta that was still to be delivered."

The result of the conference between the parties was that Mr. Moore gave Mr. Powell the check of his company for $5,000, dated October 22d; Messrs. Stephenson and Moore gave to Mr. Powell one of the series of notes owned by Stephenson, executed by the Carroll Hardwood Lumber Company, which was to be credited on account at its discount value, $4,833.34; and the defendant, Stephenson, agreed to have a check for $5,000 in the plaintiff's office the following Monday, being October 24th. It is contended by the plaintiff that, when all these payments were made, his company was to deliver to the Moore Construction Company the remaining four carloads of material.

The check of the Moore Construction Company was not paid when presented, but was protested and returned, and later, on October 27th, the bank at Charleston notified the plaintiff by wire that the check would be paid. It was paid about November 5th. The check of Stephenson was not sent when promised, so that on October 25th, the day after it was to be in New York, the plaintiff company wired Mr. Stephenson as follows:

"Check for five thousand not here as promised. Answer by wire."

The same day Mr. Stephenson wired:

"Mail check this evening; was a little disappointed."

This check was never sent, and it is upon Stephenson's agreement to pay this $5,000 and his failure to do so that this action was instituted.

After the plaintiff had been notified by the bank that on October 27th the check of the Moore Construction Company would be paid, if again presented, this company, by wire on October 26th, authorized the delivery by the railroad of the two carloads of material next in order, and these carloads were thereupon delivered to the Construction Company. It is also contended by the plaintiff that the remaining carloads were never delivered because of the failure of Stephen-

son to make payment of the $5,000 as promised, and the failure of the Construction Company to make any further payments on account. These cars were held pending negotiations between the parties until November 17th, when they were finally unloaded and stored; Stephenson and the Moore Construction Company having failed to pay the $5,000 promised by Stephenson, and the plaintiff being unwilling to make delivery until such payment was made. This material was eventually sold, and brought $150, and out of this storage charges of $75 were paid. The material having been manufactured especially for the Alderson-Stephenson building, it was of little value for anything else.

There remained due on the account of the Moore Construction Company a balance of $5,995.19. This amount was never collected. The Moore Construction Company became badly involved and on the 18th day of April, 1914, it was adjudged a bankrupt. After Stephenson's telegram of October 25th, that he would mail check that evening, the plaintiff did not hear from him again until November 10, 1910, when he wrote as follows:

"Atlantic Terra Cotta Company, 1170 Broadway, New York—Gentlemen: In re Terra Cotta for Alderson-Stephenson Building, Charleston. The Moore Construction Company advise me that you are withholding terra cotta needed for the completion of this building because I did not advance you $5,000 on the Moore Construction Company contract with you. In this connection I beg to say that when your Mr. Powell was here several weeks ago he stated to me that the terra cotta had all been shipped before he left New York and that it would be here in a day or so. Assuming that Mr. Powell's statement was correct, I was willing to advance $5,000, even though the Moore Construction Company did not then owe you such sum, and Mr. Moore, president of the Construction Company, stated in the presence of your Mr. Powell and myself that such sum was not then due. Subsequently I learned that the terra cotta had not been shipped as represented, and I did not therefore send check mentioned in my wire. I shall allow the matter to take its course upon the contract between you and the Moore Construction Company.

"Very truly yours, Samuel Stephenson."

The plaintiff company replied by night letter on November 14th, emphatically denying this statement. On November 15th Mr. Stephenson wrote again. Among other things he said:

"In reply beg to confirm my statement that Mr. Powell, when here, stated to me that the terra cotta had all been shipped—not that one or two cars of it had been shipped, and that the balance would be shipped at a subsequent time. Your Mr. Powell also carefully concealed the important fact that the terra cotta which had been shipped was consigned to your order, and not to the order of the Moore Construction Company, as had been the case in the shipments prior thereto. In short, Mr. Powell misrepresented one important fact and concealed another equally as important."

These two letters, according to Mr. Stephenson's testimony, were not written by him, but his lawyer and associate in this enterprise, C. M. Alderson. The two points made by counsel for defendant, as shown in the letter written by Mr. Alderson, as quoted above, constitute two of the chief grounds of defense; the other being that Mr. Stephenson made no agreement with Mr. Powell that he would send the check for $5,000. In view of these contentions, the facts with reference to the shipment of the cars and arrival of the same are

important.   Mr. Powell testified that he did not say that all the cars had been shipped before he left New York, but that he had ordered them all shipped.   The last four carloads, being the material in question, were shipped as follows: One car on October 15th, two cars on October 17th, and one car on October 19th.   Two of these cars arrived at Charleston October 27th, one on October 28th, and one on October 29th.

With reference to the claim of the defendant that he did not send the check because of the representation by Mr. Powell that all of the cars had been shipped before he left New York, and the concealment by Mr. Powell that these cars had been consigned to the order of the Terra Cotta Company, instead of to the Moore Construction Company, the following telegraphic correspondence is of importance.   On October 21st the Moore Construction Company wired the Terra Cotta Company as follows:

"You are evidently mistaken about shipping rest of terra cotta no bill lading yet if you have shipped please wire car numbers."

To which the Terra Cotta Company replied by night letter on October 21st:

"Your telegram twentieth terra cotta Charleston office building shipped October fifteenth from Rocky Hill, New Jersey, Pennsylvania car eighteen two seventy-five October seventeenth Pennsylvania car forty-eight one thirty-two and Pennsylvania car forty-eight naught eighty-eight October nineteenth Pennsylvania car sixteen naught seventy-six."

On October 25th the Terra Cotta Company wired the Moore Construction Company as follows:

"Very much surprised to learn to-day that your check for five thousand was returned unpaid.   You promised faithfully to have check for additional five thousand here Monday morning, which promise was not kept.   We have shipped balance of order complete, consigned to ourselves, but car will not be released until this matter is straightened out in accordance with your promise. Answer by wire."

In answer to this the Construction Company wired on the same day as follows:

"Wire Kanawha Valley Bank hold check until twelve tomorrow it will be paid Stephenson has paid us nothing and you may hold terra cotta until assurance is made of payment as we expect to stop the job Thursday indefinitely unless assurance is made of future payments will explain about check at some future time."

Neither party asked for any special instruction, but each reserved the right to object to the charge as delivered by the court, and later on the defendant served an exception to the latter portion of the charge as set out in bill of exceptions No. 2.   The charge of the court below is clear and concise, and, we think, fairly states the contentions of the parties.

The first assignment of error pertains to the action of the lower court in overruling defendant's demurrer to the declaration.   We have carefully considered this matter, and, without discussing the same, will content ourselves by saying we think that this assignment is without merit.

[1] The second assignment of error is to the effect that the court was in error in sustaining plaintiff's objection to certain questions asked William H. Powell, the president of the Terra Cotta Company, which were intended to ascertain whether that company had filed a mechanics' lien against the Alderson-Stephenson building, and' as to whether it had instituted suit to enforce such lien. While the record of that suit was offered as evidence in the curt below, it was, by stipulation, omitted from the record in this case. Counsel for defendant makes no contention as to this question in their brief; but, even if such contention had been made, this court could not have considered the same, in view of the fact that this particular evidence was omitted from the record, and is therefore not before us.

It is insisted by the third assignment of error that the court below erred in sustaining the plaintiff's objection as to the following question asked Mr. Stephenson by his attorneys:

"Q. Did you afterwards— Now, Mr. Stephenson, would you have agreed to pay that money if you had known that that terra cotta was not shipped?"

On the other hand, plaintiff insists that the court's action in refusing to admit this evidence was proper, in that the question left it with Stephenson to determine the materiality of the misrepresentation. In other words, it is contended that the party to a contract cannot determine for himself as to whether the misrepresentation relied upon as a defense is relevant and material. All facts and circumstances material to the question then before the court and jury, to wit, as to whether the defendant had contracted to pay the plaintiff the sum of $5,000, was subject to the determination of the court as to the relevancy and materiality of the same.

The defendant, among other things, asked Mr. Moore the following question:

"Q. Well, did you give any instruction to Mr. Stephenson in reference to sending that $5,000 afterwards?"

Counsel for defendant stated that it was their purpose to show by this question that the Moore Construction Company, by reason of the fact that the material was billed to the plaintiff, could not examine it, and that such examination as it was able to make disclosed the fact that the material was not suitable to go into the building, and that, therefore, it directed Stephenson not to send the check in question. The court, in sustaining the objection to this question, said:

"The objection I sustained was to the evidence with relation to direction by the company, of which this witness was president, to Mr. Stephenson. Of course, if you want to go into that defense to the merits of the account against the Moore Construction Company, I suppose that that might be done."

Thus it will be seen that the defendant was afforded an opportunity to go into the merits of the account upon which plaintiff relied, but did not do so. Therefore the only question which is before us is as to whether it was proper to show that the failure of the defendant to pay the amount of $5,000 was on account of the fact that Mr. Moore had instructed him not to pay the same. This of itself could not affect the controversy one way or another, inasmuch as any instruction that may have been given to Moore could not relieve Stephenson from the

obligation which he had undertaken when he agreed to send plaintiff the sum of $5,000.

The fifth assignment of error relates to the action of the court in sustaining plaintiff's objection to the following question and answer:

"Q. Do you know why they refused to make delivery to you? A. No, sir; I don't know exactly. I couldn't say exactly why they refused to make delivery to us, except their letters and telegrams indicate they wanted to force us to pay for all the terra cotta before we received it."

This action of the court in refusing to permit this testimony to be introduced was eminently proper. The witness stated that he did not know exactly, and could not say exactly, that the plaintiff refused to make delivery, and then he proceeds to testify as to what the letters and telegrams indicated. Testimony of this character is not admissible. The telegrams were in the possession of the defendant and speak for themselves. In other words, it was not proper for the witness to testify as to what he thought the letters and telegrams meant—that being a question which rested solely with the jury for its determination.

The sixth assignment of error challenges the correctness of the ruling of the court in sustaining plaintiff's objection to the following question asked Mr. Moore:

"I will ask you, Mr. Moore, if that terra cotta was billed to you as Mr. Powell told you, and as you relied upon, and at the time you told Mr. Stephenson to send him the $5,000 check?"

This question assumed facts to be true that were controverted to say the least of it, and for that reason the court very properly sustained the objection of the plaintiff. The witness was further questioned as follows:

"Q. Did Mr. Powell, when he was here, state to you that the terra cotta had been ordered shipped to you, all of it? A. He did. Q. Did you understand from that—the statement of Mr. Powell—that it had been shipped as all the other terra cotta before that time had been shipped? * * * Q. In what way did you understand, from your conversation with Mr. Powell, that this terra cotta had been shipped?"

It would have been competent for the witness to have testified as to any statement made by Mr. Powell, but it was solely within the province of the jury to determine what inference, if any, should be drawn therefrom. It was improper for the witness Moore to testify as to his understanding as to the meaning of the statement alleged to have been made by Powell.

The defendant excepted to the action of the court in excluding the following question and answer:

"Q. Did Mr. Powell say anything to you, or intimate in any way that the shipment that had been made of the last shipment, when he was here on October 17th, was made in any different way from the way that the terra cotta had been shipped prior to that time? A. He positively gave me the impression, or I had that impression, that it was shipped in the same way that all the other terra cotta was shipped."

The answer in this instance was immaterial from any viewpoint. As we have already stated, the witness could have testified as to what Powell said; but it was improper for him to testify as to any im-

pression he may have had as to the meaning of the language employed by Mr. Powell.

The seventh assignment of error pertains to the following portion of the court's charge to the jury:

"That is all I care to say to you, gentlemen. You may take the declaration and the evidence in this case, and determine from it whether or not Mr. Stephenson made this promise. If he did, the plaintiff here is entitled to a recovery of a judgment for the sum of $5,000, with interest from the time it should have been paid. The allegation in the declaration is that it was to be paid on or about October 24th. There is some evidence here with regard to that, that was before you, and I did not hear well enough to be able to undertake to tell you definitely what the date was. As I said, the question for you to determine is whether this promise was made under the circumstances alleged by the plaintiff, and that is the main question. If it was made, there was in these matters testified to consideration to support such promise, and you can find in accordance with your belief as to the facts."

The vital questions involved here are as to whether the plaintiff and defendant had entered into an agreement as contended by the plaintiff, and as to whether it was such an agreement as could be enforced. The learned judge who heard the case in the court below submitted the question to the jury as to whether such an agreement had been entered into between the parties, and he further very properly told the jury that, if they found that such an agreement was made between the parties, the delivery of the material for the purpose of completing the building was sufficient consideration to support the promise, provided the defendant made it.

However, counsel for defendant insists that the defendant was induced to enter into an agreement to send the plaintiff a check by the false and fraudulent representations of the plaintiff, and that the court erred in failing to instruct the jury as to that question. In other words, the defendant says:

"The court ignores entirely the defense, and places it before the jury as making a mere categorical denial to the plaintiff's charges."

The record in this case discloses the fact that the main defense was a denial that there was an enforceable agreement between the parties; that is to say, no contract was entered into between the parties by which defendant agreed to pay the plaintiff the sum of $5,000.

[2] As we have stated, it appears that the plaintiff and the defendant each reserved the right to object to the charge to the jury. If the defendant had relied upon any other defense than that of the general denial of the execution of the contract, such defense could have been presented by a proper prayer for instructions; but this, as we have stated, was not requested by the defendant. In the case of Texas & Pacific Railroad Co. v. Volk, 151 U. S. 73, 14 Sup. Ct. 239, 38 L. Ed. 78, the Supreme Court said:

"The omission of the court to instruct the jury upon the subject of the plaintiff's contributory negligence is not open to exception, because the bill of exceptions does not show that the defendant requested any instruction upon that subject. In England, it is misdirection, and not nondirection, which is the subject of a bill of exceptions. Anderson v. Fitzgerald, 4 H. L. Cas. 484, 499. In this country, the rule is somewhat more liberal; and the not giving an instruction upon a point in issue may be excepted to, if one was requested,

but not otherwise. In a very early case, Chief Justice Marshall said: 'There can be no doubt of the right of a party to require the opinion of the court on any point of law which is pertinent to the issue, nor that the refusal of the court to give such opinion furnishes cause for an exception.' Smith v. Carrington, 8 U. S. (4 Cranch) 62, 71, 2 L. Ed. 550, 553. As afterwards more fully stated by Mr. Justice Story, 'it is no ground of reversal that the court below omitted to give directions to the jury upon any points of law which might arise in the cause, where it was not requested by either party at the trial. It is sufficient for us that the court has given no erroneous directions. If either party deems any point presented by the evidence to be omitted in the charge, it is competent for such party to require an opinion from the court upon that point. If he does not, it is a waiver of it.' Pennock v. Dialogue, 27 U. S. (2 Pet.) 1, 15, 7 L. Ed. 327, 332. See also United States Exp. Co. v. Kountze, 75 U. S. (8 Wall.) 342, 353, 354, 19 L. Ed. 457, 461; Shutte v. Thompson, 82 U. S. (15 Wall.) 151, 164, 21 L. Ed. 123, 127. A request for instructions, being necessary to entitle the excepting party to avail himself of an omission to instruct, cannot be presumed, but must affirmatively appear in the bill of exceptions."

[3] It is well established that, where a particular portion of a charge is excepted to, it must be construed in connection with the other part of the same. In other words, an appellate court will not take a certain portion of the charge and make that a basis of error, but will take the charge in its entirety, and if, upon considering it as a whole, the law has been fairly stated as applying to the facts, the case will not be reversed. Therefore in this instance we must construe the preceding part of the charge in connection with that portion to which an exception is taken. The court below, in this instance, after explaining the nature of the case, said:

"Now, the facts with relation to that are for you to determine. They are controverted, but I want to instruct you that Mr. Stephenson's interest was such that the arrangement for the delivery of this material would be a good consideration for his promise. He was one of the two owners, he had the power of protecting himself in so far as his contractor was concerned, and the contractor was present and a party to the agreement, if it was made, and the consideration of receiving this material and going on with the building was of such a nature as to be good consideration for the promise, if he made it."

At the conclusion of the court's charge the following language was used:

"As I said, the question for you to determine is whether this promise was made under the circumstances alleged by the plaintiff, and that is the main question. If it was made, there was in these matters testified to consideration to support such promise, and you can find in accordance with your belief as to the facts."

It is manifest from the foregoing that it was the purpose of the court below to submit the entire case to the jury, and the fact that he used the language, "under the circumstances alleged by the plaintiff," is not sufficient to justify the contention that the court withheld from the jury any facts or circumstances relied upon by the defendant tending to show that Mr. Powell made misrepresentations and concealed material facts. This question was before the jury, and in the light of the evidence it was for the jury to determine as to whether the agreement was in accordance with the contentions of the plaintiff. However, if the court had simply said to the jury that the only question was as to whether an agreement was entered into between the

parties, as contended by the plaintiff, such instruction would have been proper, inasmuch as no other question remained for the decision of the jury.

We will say in passing that the claim of the defendant that he did not send the check because of the misrepresentation of Mr. Powell that all the cars were shipped before he left New York, and the alleged concealment by Mr. Powell of the fact that these cars had been consigned to the order of the plaintiff, instead of the Moore Construction Company, in view of the testimony offered in the court below, could not have been treated very seriously by the jury under the circumstances. On the 25th day of October, as we have stated, the plaintiff wired the Moore Construction Company that they were surprised to learn that the check for $5,000 had been returned unpaid. In this telegram it was also stated that they had shipped the balance of the order complete, consigned to themselves, but that the cars would not be released until the matter had been straightened out in accordance with the contract. In reply to this telegram the Construction Company wired the plaintiff to have the bank hold the check until noon the next day, when it would be paid by Stephenson, and also, among other things, saying that:

"Stephenson has paid us nothing and you may hold terra cotta until assurance is made of payment as we expect to stop the job Thursday indefinitely unless assurance is made of future payments will explain about check at some future time."

This clearly shows that on the 25th day of October the Moore Construction Company knew that the material had not been consigned to them, and notwithstanding that fact they wired the plaintiff that if the check was held by the bank until the next day it would be paid. Any objection to the payment of the check by Stephenson, or any direction that may have been given by the Moore Construction Company not to pay the same, upon the ground that the material was not consigned to the Construction Company, in view of this written evidence, must, from the very nature of things, have been an afterthought, and no doubt this is the view the court below had in regard to this phase of the case.

It is quite clear from the evidence in this case that it was the purpose of the Moore Construction Company, as well as the defendant, at the time the agreement which forms the basis of this suit was made, to secure a sufficient amount of material to complete the construction of the building of the defendant, and when the parties met it was but natural that the plaintiff should require the Construction Company to pay what was then due plaintiff, and under these circumstances it cannot reasonably be contended that while in this frame of mind the plaintiff would have made no provision to secure the payment for the material to be thereafter delivered.

No doubt it was the defendant who was most anxious to secure an adjustment of the matters then in controversy between the plaintiff and the Construction Company, in order that the building might be completed as speedily as possible, and it would certainly be unfair to require the plaintiff to deliver the material necessary for the com-

pletion of the building and at the same time permit the defendant to avoid the payment of the cost of the same.

A careful consideration of the contentions of the parties impels us to the conclusion that this case was fairly and impartially tried, and there is no substantial reason why the judgment of the lower court should be disturbed.

Therefore, for the reasons stated, the judgment of the lower court is affirmed.