## STATE AUTOMOBILE MUT. INS. CO. OF COLUMBUS, OHIO, v. YORK et al.
### No. 4441.

Circuit Court of Appeals, Fourth Circuit.
June 14, 1939.

Murray Allen, of Raleigh, N. C., for appellant.

Kenneth C. Royall and Charles U. Harris, both of Raleigh, N. C., for appellee Mabel A. York.

J. C. Little, of Raleigh, N. C. (P. H. Wilson, of Raleigh, N. C., on the brief), for appellee C. V. York.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in an action brought to recover on a liability insurance policy. Prior to instituting this action, the plaintiff, Mabel A. York, had recovered judgment against her husband, C. V. York, hereafter referred to as the insured, for the sum of $12,000 as damages on account of injuries sustained in an automobile accident. This judgment had been affirmed on appeal by the Supreme Court of North Carolina. York v. York, 212 N.C. 695, 194 S.E. 486. Having failed to collect the judgment after issuance of execution thereon, plaintiff instituted this action against insured and the State Automobile Insurance Company of Columbus, Ohio, to recover under the $10,000 policy of liability insurance which the company had issued to insured. Insured filed an answer in which he also asked recovery against the company, on the ground that in bad faith it had refused to compromise and settle the judgment obtained against him by his wife. The company denied all liability, contending that insured, by fraud and collusion with plaintiff and by failure to cooperate with the company in defense of the action instituted against him, had breached the condition of the policy as to misrepresentation and fraud and also the covenant requiring cooperation in defense of suits and claims.

Issues were submitted to the jury in accordance with the North Carolina practice; and, in response thereto, the jury found that the insured had not failed to cooperate with the company, and had not been guilty of fraud or collusion with plaintiff. They found also that the failure of the company to compromise and settle the judgment obtained by plaintiff was a breach of good faith entitling insured to recover damages in the sum of $2,300. Judgment was accordingly rendered against the company in favor of plaintiff for the full amount of the policy, $10,000 and interest, and in favor of insured for $2,300 damages, with provision that $2,000 of the latter amount be applied on the judgment which plaintiff had obtained against insured. From this judgment, the company has appealed and four questions are presented by the appeal for our consideration, viz.: (1) whether verdict should have been directed for the company on plaintiff's claim under the policy; (2) whether verdict should have been directed for the company on insured's claim for damages; (3) whether there was error in excluding the testimony of the witness Anderson as to why insured was not called upon to testify in the prior action; and (4) whether the court erred in his charge to the jury in not sufficiently stating the company's contentions.

On the first question, the contention of the company was that the evidence showed collusion, fraud and lack of cooperation on the part of the insured so conclusively that, notwithstanding that the burden rested upon the company on those issues, a verdict should have been directed in its favor. There was evidence on the part of the company showing or tending to show that insured made inconsistent written statements about the accident, that he discussed the accident with his wife and family, that he made efforts to settle his wife's claim with the insurance adjuster, that he became angry when he was inferentially charged with collusion, that he refused to sign pleadings without consulting counsel, that he did not make suggestions to counsel during the trial of the case and that he was pleased with the verdict rendered against him. As against this, there was evidence on the part of insured that he furnished to the company's representatives all the information that he had concerning the accident, that he made a written statement the day following the accident and a fuller statement some months later, that he signed and verified the pleadings prepared by the company's lawyer because he thought it his duty to cooperate in the defense although, as he advised the lawyer, some statements therein contained were not entirely accurate, that he at no time refused to give counsel for the company any information requested, that his

efforts to settle the case were made at the request of the company's adjuster, that he attended the trial and was ready to testify but did not do so because not called as a witness, that he employed counsel because advised to do so by counsel for the company, that his anger at being charged with collusion arose out of natural indignation and not out of any desire not to cooperate, and that his pleasure at the verdict rendered in the case was but the natural feeling of a man whose wife had obtained a recovery which another would be required to pay and did not show or tend to show any fraud, collusion or failure to cooperate on his part.

In the absence of the evidence, to which we shall next refer, as to changes in statements made by insured and his wife and daughter as to the cause of the accident, there is little, if anything, in the testimony relied upon by the company which has any tendency to establish collusion, fraud or lack of cooperation. Taken in connection with this evidence, however, we think it was sufficient to take the case to the jury, but not sufficient to require the direction of a verdict. The evidence in the prior case showed that the tires of insured's automobile were worn smooth and that it skidded and turned over as the result of running into a sudden shower of rain which had made the pavement slick. The negligence relied on was driving with smooth tires upon a wet pavement at an excessive rate of speed. Both plaintiff and her daughter testified that insured was driving at a speed of between 55 and 60 miles an hour and that he did not slow down when approaching the wet pavement. In a statement, given about a month after the accident to a representative of the company, the daughter stated that the accident was unavoidable and said nothing about the insured not slowing down. Plaintiff gave a statement to the company's representative about two months after the accident in which she stated that the speed was not over 45 miles an hour that she could not say whether insured had reduced his speed before reaching the wet pavement or not and that she considered the accident unavoidable. The insured on the day following the accident gave a statement to the company's representative to the effect that he was driving at a speed of not over 45 miles an hour, that he slowed down to about 30 miles when he saw he was coming into the shower and that he regarded the accident as unavoidable. Later

he gave a statement to the company's attorney to the effect that, before reaching the shower, he was traveling about 55 to 60 miles an hour, and that, on seeing the shower, he removed his foot from the accelerator. The discrepancy between this and his prior statement was explained by saying that in the later statement he calculated the speed on the basis of the distance which he had travelled before the accident and the time consumed in doing so.

██ The discrepancy in the statements made by insured himself was clearly not sufficient to establish lack of cooperation so conclusively as to justify direction of verdict for the company. Rockmiss v. New Jersey Mf'rs Fire Ins. Co., 112 N.J.L. 136, 169, A. 663; Conroy v. Commercial Casualty Ins. Co., 292 Pa. 219, 140 A. 905. It is well settled that, to relieve the insurer of liability on the ground of lack of cooperation, discrepancies in statements by the insured must be made in bad faith and must be material in nature and prejudicial in effect. Medico v. Employers' Liability Ins. Corp., 132 Me. 422, 172 A. 1; Ocean Accident & Guarantee Corp. v. Lucas, 6 Cir., 74 F.2d 115, 98 A.L.R. 1461.

The discrepancy between the statements made by the insured, however, when taken in connection with the discrepancy between the testimony and prior statements of his wife and daughter and the relationship and interest of the parties, was sufficient to carry the case to the jury on the issues of collusion and lack of cooperation. But we do not think that it established collusion or lack of cooperation so conclusively as to warrant direction of verdict for the company in the face of testimony of insured directly to the contrary. Employers' Liability Assur. Corp. v. Bodron, 5 Cir., 65 F.2d 539. The speed at which the automobile was traveling was, of course, a mere matter of opinion. Whether there was a slowing down immediately preceding the accident, was a matter likely to be confused in the excitement attending the accident. It was natural that the family should talk the matter over among themselves; and it is entirely possible that the subsequent statements as to speed and slowing down were arrived at as the truth of the matter after full consideration and reflection without any suggestion from the insured or any collusion on his part. If this was the case, the change in statements would not establish collusion of insured

with plaintiff or lack of cooperation with the company.

A confusing element is introduced into the case by reason of the fact that the husband's interest is almost necessarily enlisted on the side of his wife in a suit against him in which any recovery will benefit her and will be paid by an insurance company and not by him; but the company has ample means to protect itself from the danger of a situation of this sort by excluding from the coverage of its policy liability to the wife or other members of insured's family. Where for business reasons it elects to cover a risk of this character, it cannot complain when liability is asserted, nor should it be permitted to shield itself by the argument that the ordinary friendly relationship existing between members of a family furnishes of itself evidence of fraud and collusion. In such a case where members of the family corruptly conspire and work together to secure a recovery not justified by the facts, the policy should be and is avoided; but it is not avoided merely because the sympathy of insured is with the injured members of his family rather than with the company which insured him, or because he does not suspend during the litigation ordinary friendly intercourse with his family. The inquiry is not whether the sympathy of insured is with the plaintiff in the litigation, but whether he has failed to furnish proper assistance to the company in its defense of the suit or has entered into collusion with the plaintiff to establish liability unfairly. Where such relationship exists, however, the conduct and testimony of the parties should be carefully scrutinized by court and jury, since the interest of the parties is not really adverse. See United States Casualty Co. v. Drew, 9 Cir., 5 F.2d 498; Buckner v. Buckner, 207 Wis. 303, 241 N.W. 342; Conroy v. Commercial Casualty Ins. Co., 292 Pa. 219, 140 A. 905; New Amsterdam Casualty Co. v. Mandel, 115 N.J.Eq. 198, 170 A. 19.

On the second question, we think that there was no sufficient evidence to warrant a finding that the company had been guilty of bad faith in not making settlement with plaintiff, and that verdict for defendant should have been directed on the cause of action asserted by the insured. An insurer must act with good faith towards an insured in the defense and settlement of claims which under its policy it has the exclusive right to defend and set-

tle, and is liable in damages to him for failure to do so. American Mutual Liability Ins. Co. of Boston v. Cooper, 5 Cir., 61 F. 2d 446; Maryland Casualty Co. v. Elmira Coal Co., 8 Cir., 69 F.2d 616; Brassil v. Maryland Casualty Co., 210 N.Y. 235, 104 N.E. 622, L.R.A.1915A, 629. And it is held, also, that recovery may be had for negligence of the insurer in refusing to settle a claim for damages against the insured. Attleboro Mfg. Co. v. Frankfort Marine Accident & Plate Glass Ins. Co., 1 Cir., 240 F. 573; Ballard v. Ocean Accident & Guarantee Co., 7 Cir., 86 F.2d 449; Douglas v. United States Fidelity & Guaranty Co., 81 N.H. 371, 127 A. 708, 37 A.L. R. 1477 and note. But here there is no sufficient showing of either negligence or bad faith on the part of the company to justify recovery against it. While the evidence as to collusion and failure to cooperate was not sufficient, as we have seen, to require direction of a verdict for the company on issues directed to those questions, it was sufficient to take the case to the jury thereon; and, in the light of the existence of such evidence, it cannot be said that the defendant was acting either in bad faith or negligently in refusing to accept the offer of settlement made by plaintiff. Cf. Kleinschmit v. Farmers Mut. Hail Ins. Ass'n, 8 Cir., 101 F.2d 987; Maryland Casualty Co. v. Cook-O'Brien Const. Co., 8 Cir., 69 F.2d 462. Furthermore, it does not appear that insured was in any way damaged by the company's refusal to settle, as he had not paid the judgment against him and testified that he never expected to pay it.

Coming to the third question, objection was made to the exclusion of testimony of Mr. John H. Anderson, one of the attorneys who represented the defendant in the prior litigation, as to why he did not call insured as a witness for defendant therein. On cross examination of Mr. Anderson, the fact had been elicited that he had not called insured as a witness on the former trial; and, on redirect examination, he was asked to state why he had not called him. On objection to the question, the testimony was excluded and, in the absence of the jury, the witness gave the following answer: "The reason we did not put him on the stand was because of his conflicting statements concerning the manner in which the accident occurred, one statement which indicated no liability on his part or negligence in driving the car at that time

and other statements which might indicate liability. There was a clear indication that he would do everything he could to help Mrs. York recover against himself if put on the stand and that he would not serve his own interests except in so far as they were connected with the interests of his wife in the law suit."

It is clear that the cross examination as to failure to call insured as a witness opened the door to explanation. The answer of the witness, however, related either to matters already in evidence or to conclusions drawn from them; and we cannot see that its exclusion could have been prejudicial. It was a matter which could be covered quite as well by argument of counsel as by testimony; for with the conflicting statements of insured in evidence and with his favorable feeling toward the cause of plaintiff admitted, it must have been apparent to everyone, without the testimony of counsel, why he was not called. We cannot assume that the jury were without ordinary intelligence, or that failure to admit testimony as to a matter so obvious could have influenced the result of the trial.

The fourth question relates to an exception taken to the charge on the ground that the trial judge did not therein sufficiently recapitulate the evidence and contentions of the defendant. It appears, however, that the judge did call the attention of the jury to the basic contention of defendant, viz.: that "Mr. and Mrs. York put their heads together and pursued a course of conduct that would enable Mrs. York to recover." He called attention to the witnesses upon whom defendant relied to establish its contentions and submitted issues in the form of written interrogatories, which clearly directed the attention of the jury to the determinative questions of fact. No request for more specific instructions on the contentions of the parties was submitted; and the rule is well settled that ordinarily failure to charge on contentions cannot be held for error in the absence of specific request. Stephenson v. Atlantic Terra Cotta Company, 4 Cir., 230 F. 14, 21; United States Express Co. v. Kountze Brothers, 8 Wall. 342, 353, 354, 19 L.Ed. 457. It is true that the charge should be judicial and not one-sided or argumentative, and when the judge charges as to how the jury should find on the basis of the contentions of one side, he should charge how they should find if they accept the contentions of the other. Pullman Co. v. Hall, 4 Cir., 46 F. 2d 399. The charge here, however, cannot properly be characterized as unjudicial; and the jury were fully instructed as to how to answer the issues in the event of a finding for one side or the other. The duty to instruct the jury how to find on the basis of a finding as to contentions is of little real importance where a case is submitted under interrogatories, as was done here, and not under the general issue; for the interrogatories themselves, if properly drawn, separate the crucial fact questions from the mixed questions of law and fact covered by the general issue and submit the fact issues clearly to the jury without further elaboration. The contentions of the parties were no doubt fully covered in the arguments of counsel addressed to the issues as submitted; the issues themselves were explained by the court and were before the jury; and there is no reason to think that the jury did not fully understand the bearing of the evidence upon them.

It is argued that a new trial should be granted because the court submitted to the jury the contentions made by the insured with respect to his claim for damages and the issues arising thereon. It does not appear, however, that the court instructed the jury as to the weight to be given the evidence relied on by insured; and the action complained of amounted to no more than submitting issues of fact raised by the pleadings and charging the jury as to the contentions of the parties thereon. This could not have vitiated the verdict of the jury on other issues properly submitted to them. Even if, as contended, the jury may have gained the idea that the judge was expressing an opinion on the facts by the mere submission of the issues and the charge relating thereto, it must be remembered that, in the federal courts, the judge is not forbidden to express an opinion on the facts if he clearly leaves to the jury the ultimate decision, as was unmistakably done here.

Contention is made that so far as the claim asserted by plaintiff is concerned, any alleged errors must be treated as harmless, since defendant waived any defense which it may have had under its policy by undertaking and carrying on the defense of the prior litigation. Defendant served on insured a reservation of rights before undertaking the defense, but plaintiff contends that this avails nothing because not assented to by the insured. The question

presented is an interesting one; but in the view which we take of the case it is not necessary to decide it here. See notes 98 A.L.R. 1481 et seq., 72 A.L.R. 1493 et seq.

It follows that the judgment appealed from will be affirmed in so far as it grants recovery against defendant company for the cause of action asserted by plaintiff, but will be reversed in so far as it grants recovery on the cause of action asserted by the insured.

Affirmed in part; reversed in part.

SOPER, Circuit Judge (concurring in part).

Any one who reads the statements of the Yorks—husband, wife and daughter—made shortly after the accident, and compares them with the testimony of the declarants in the suits that followed, is bound to notice a decided change of attitude. The burden of the statements was that the accident was inevitable, while the tendency of the testimony was to show such negligence on the part of the husband as would enable the wife to collect damages under his insurance policy. It is a close decision that the evidence of failure on his part to co-operate with the Insurance Company in the defense of the suit of the wife was not strong enough to justify a directed verdict in its favor, but I agree that it was a question for the jury, with the added comment that a witness is duty bound to tell the truth, although it may not be to his wife's advantage, even when the matter in issue is a claim against an insurance company.

There is, however, no doubt in my mind that the Insurance Company was prejudiced by the rulings of the court. The Insurance Company was contending that the husband, in collusion with his wife, and daughter, had not made a sincere defense to his wife's suit, while the Yorks were asserting that this contention was so utterly baseless that the making of it was an act of bad faith on the company's part. Is it not perfectly clear that these opposing contentions were so closely related to one and the same issue that a misdirection by the judge as to one of them was bound to influence the jury? The judge told the jury in effect that there was evidence tending to show that the failure of the company to compromise and settle the judgment obtained by the wife was a breach of good faith on its part. We are all agreed that there was no such evidence. Does it not inevitably follow that the mistake of the judge had a prejudicial effect on the minds of the jury? The refusal to allow a witness for the company to explain why it did not put York on the stand in the trial of the suit brought against him by his wife, after the failure to call him had been brought to the attention of the jury, was of course erroneous. The contrast between the relatively full exposition of Mrs. York's side of the case with the meager description of the company's defense is also noticeable. These latter matters might perhaps be justifiably overlooked, were it not for the substantial error above noted. Coupled with it there resulted a prejudice to the Insurance Company that calls for a reversal of the entire judgment. The reversal of the judgment, insofar as it was based on a supposed lack of good faith on the part of the Insurance Company, does not go far enough.