## ALOST v. J. MOOCK WOOD &·DRAYAGE CO., INC.

———

(March 4, 1929. Opinion and Decree.)

———

Dart and Dart, Felix J. Puig and M. A. Woodruff, of New Orleans, attorneys for plaintiffs, appellees.

Milner and Porteous, of New Orleans, attorneys for defendant, appellant.

JONES, J. Plaintiff, a guest in an automobile, sues for $25,000.00 damages for personal injuries alleged to have been caused by the negligent driving of defendant's chauffeur in a collision with a truck at the intersection of Magnolia and Clio Streets in this city about 12:30 p. m. on February 26, 1926. Her husband joins in the suit, claiming $1,373.20 for hospital and medical expenses incurred by his wife as a result of her injuries and $5,000.00 damages to him for loss of the companionship of his wife and for loss of possible joys of parenthood.

The negligence charged to the truck driver was excessive speed and failure to stop or slow down at a right-of-way street, as required by the traffic ordinance of the city.

Plaintiff alleges the following physical injuries:

All the muscles of the left side of the

abdomen, including the peritoneum and fascia were so torn and lacerated as to allow the intestines to protrude through the rent to under surface of the skin, forming a large hernia, or hematoma, which necessitated immediate operation; small blood vessels that supply the nourishment to the intestines seriously damaged; traumatic appendicitis, and phlebitis of the femoral vein of left thigh, which prevented use of left leg and necessitated the use of crutches about the house; and nervous shock which has weakened her permanently.

Defendant admitted the collision, but denied all negligence, and in the alternative plead contributory negligence as follows:

(1) Unlawful speed;

(2) Car not under proper control; and

(3) Failure to protest against unlawful speed and sitting on front seat with two other persons.

The trial court, after the case was twice fully argued, found that the driver of the truck was guilty of negligence and assessed the damages to wife at $4,000.00 and to the husband at $1,373.20. No finding was made as to the negligence of the plaintiff's driver.

The record shows the following:

The collision occurred at the intersection of Clio and Magnolia Streets in New Orleans. Clio Street is paved and traversed by a single electric car track running from the river towards the lake. From this street another track branches off at Magnolia Street in the uptown direction. Magnolia Street at the point of intersection and below Clio Street was paved with brick or stones. At the lower river corner of the intersection is a building situated on the property line and described as Hyams' Stable. On the opposite corner, i. e., the lower lake corner, is an open yard separated from the street by a board fence known as Hyams' Coal Yard. On the uptown river corner is a grocery, and on the uptown lake corner is a one-story double cottage. Magnolia Street is twenty-eight feet six inches wide from curb to curb, and the sidewalks are eight feet, eight inches wide, making the total width of Magnolia Street forty-five feet, ten inches. Clio Street has a width of twenty-eight feet, eight inches from curb to curb, with sidewalks of eight feet, eight inches, making the total width of this street also forty-five feet ten inches. Plaintiff was on the front seat of a Velie automobile with Mr. and Mrs. Edward Riehl, going out Clio Street towards the lake, and defendant's truck was going up Magnolia Street towards Carrollton. The traffic regulations make Clio Street a right-of-way street and vehicles thereon have the right of way over vehicles approaching on intersecting streets, which must come to a full stop. A horse and wagon, at the time of the collision, were approaching Clio Street from the lake on the uptown side near the curb, and, when the automobile was turned over by the impact with the truck, the horse was knocked down and a wheel of the wagon broken. After the collision the automobile was lying in Clio Street near uptown curb, facing toward the lake, about twenty-five feet from Magnolia, with its broken top touching the horse, and the truck was several feet from the corner on the lower side of Clio Street, pointing toward the lake. The right rear fender and right rear door of the automobile were smashed in by the impact with the truck, also a part of the running board between the two fenders, and the left rear wheel was broken by contact with the curb. The rear part of the engine of the truck was damaged just behind the motor.

It would serve no useful purpose to analyze the three hundred pages of testi-

mony, which is, as usual in such cases, full of contradictions. A careful study of the entire record convinces us that the statements of the truck driver, and defendant's other witnesses who claim to have seen the accident, do not comport with the physical facts. Had plaintiff's car been going at a speed of thirty miles per hour and only half a block away when the truck, after coming to a full stop, started across Clio Street at two miles per hour, the automobile would have gone three hundred and seventy-five feet, while the truck was going twenty-five feet, and it would, have been out of danger. Furthermore, the truck could not have made the turn to the right if its front wheels were already five feet over the uptown rail on Clio Street, without striking the sidewalk, and it would have been suicidal for the driver of plaintiff's car to have tried to go around the front end of the truck, which was then within six feet of the uptown sidewalk of Clio Street, with a horse and wagon just twenty feet ahead, directly in his path.

The damages to the two colliding cars and their positions after the accident also support the conclusion that the statements of defendant and his main witnesses are improbable. Accordingly, we conclude with the trial judge that the driver of the truck was guilty of negligence, because he failed to stop at a right-of-way street as required by the City Ordinance. Had he done so he would necessarily have seen the automobile approaching, and no accident would have occurred.

We do not find it necessary to pass upon the question as to the negligence of the driver of plaintiff's car, as it has been repeatedly held that the negligence of the driver cannot be imputed to a guest.

The argument that plaintiff is guilty of contributory negligence, because she failed to protest to her host at his method of driving, seems to us unsound both in law and fact, as the record shows that plaintiff had had but little experience with motor cars, had never driven one and knew little or nothing about them, while her host had been driving them for some years and was thoroughly familiar with them. Furthermore, the record does not show any such evidence of negligent driving or such close proximity to danger as to necessitate a protest by the guest. Experience tells us that back seat suggestions as to the handling of a car are disconcerting and irritating to the driver.

We further find that there is nothing in the charge that plaintiff was negligent in riding with two other persons sitting in front seat. The evidence on this point is that the seat was amply large for the three thin persons who were seated on it and that the driver was not obstructed by the presence of the other two persons.

We also agree with the trial judge that neither traumatic appendicitis nor permanent injury was proved, although there are over one hundred pages of medical testimony.

The surgeon, Dr. Tilly, testified that he performed a very serious abdominal operation; that the operation, which was a major one, showed a small portion of the intestines badly bruised and congested; that for sometime thereafter the patient was in danger of her life and that her condition was affected by a number of complications for ten days, when phlebitis developed and also appendicitis.

Dr. Danna, a distinguished surgeon of this city, testified that the operation was necessary, in his opinion, and that it had been performed with great skill, and the three physicians of defendant all admitted that the operation would have been neces-

sary ultimately, although they thought it had been performed sooner than necessary under the circumstances.

The record shows that plaintiff was at the Charity Hospital for two days, that she was then moved to the Hotel Dieu, where the operation was performed on February 9th, and where she remained until March 11th, under the constant care of Dr. Tilly with occasional visits from Dr. Danna; that she was then moved to her home, where her continued illness necessitated the use of a rolling chair and crutches for some weeks; in fact she did not finally discard her cane until the latter part of June.

Under all the circumstances, although we are firmly convinced that plaintiff has suffered much and has been subjected to great discomfort and pain, the amount of $4,000.00 seems disproportionately high when compared with other judgments of our appellate courts in somewhat similar cases, and we think that a judgment for $3,000.00 for the suffering and pain of the wife will do substantial justice, as we are convinced that there will be no permanent injuries. In Gelpi vs. Wilbert, 9 La. App. 170; So. Rep. Vol. 119, p. 455, decided November 10, 1928, the Court of Appeal of the First Circuit uses the following language:

"In determining the amount which constitutes fair remuneration for medical services, many factors must be taken into consideration, some of which are the skill and reputation of the physician, the time he devotes to the case, and the inconvenience and expense to which he may be subjected. *Another important fact to be considered is the amount of the estate and the ability of the patient to pay.*"

The record shows that plaintiff and her husband are in moderate circumstances, that she has to do her own work and her husband has had to borrow money from his father to pay the hospital bills and the bill of Dr. Danna for $25.00. The bill of Dr. Tilly of $800.00 has not yet been paid. Considering the circumstances of plaintiff, the duration of her illness, and the fact that the above quoted statement correctly sets forth the controlling law, the surgeon's bill of $800.00 is unreasonable and should be reduced to $400.00.

For the above reasons, the judgment is amended, and it is now ordered that there be judgment in favor of plaintiff, Lillian Orr, wife of Herbert Alost, and against defendant, J. Moock Wood & Drayage Company, in the sum of three thousand dollars ($3,000.00), and in favor of plaintiff, Herbert Alost, and against defendant, J. Moock Wood & Drayage Company, in the full sum of nine hundred seventy-three and 20/100 dollars ($973.20); with legal interest from judicial demand until paid. Costs to be paid by appellee.