BARNHILL, J., dissenting.
STACY, C. J., and WINBORNE. J., concur in dissent.
This is an action for actionable negligence brought by plaintiff against defendant to recover damages. The defendant denied negligence and set up the plea of contributory negligence. The plaintiff and defendant are husband and wife, have been married to each other for 34 years and have five children.
The defendant had an engagement in Charlotte, N.C. on 3 June, 1935, about 12:30 p.m., to have a contract signed, and left Raleigh about 9 o'clock — about a half hour late — in his car taking the plaintiff, his wife, who was riding with him on the front seat, and their daughter Mabel, who was riding on the rear seat. The plaintiff testified, in part: "It was cloudy later on and it was cloudy when we left Albemarle. It was not raining when we left Albemarle. I can't recall exactly at what place we first saw signs of rain after we left Albemarle. We saw the rain coming in front of us. I was able to tell that the rain was approaching us. Q. At what speed was your husband driving his automobile *Page 697 
at the time you were traveling from Albemarle and saw the rain approaching? Ans.: I would say 55 or 60 miles an hour. The road curved a little to the left and then to the right and straightened out. . . . Q. Have you got any estimate in your mind? Ans.: The rain was only for such a minute, a shower, we must have been right near the curve or right at it when the rain struck us. Q. Did your husband, when the rain struck you, slow up at any degree at all? Ans.: No. Q. I believe you say it was 55 or 60 miles an hour? Ans.: Yes. Q. And he did not slow up? Ans.: No. Q. Did the car go around the first curve to the left? Ans.: It went partly around and then he tried to straighten — I thought we were going over that embankment — and he got it straightened and went over the embankment on the other side. Q. You were in the midst of the first curve when what happened to the car? Ans.: When it went to straighten out. Q. After passing the first curve? Ans.: Yes. I don't recall his slowing his car at all while we went around the first curve. The car skidded when we were going around the first curve. When we got to the second curve the car went over the embankment on the right. It first went to the left and then to the right. I would not know how close the car was to the curve when the rain struck. Mabel called attention to the rain coming. My husband could hear her. I couldn't say how long that was before reaching the curve. I don't recall my husband's making any comment at that time. When the car went off the road the last thing I remember was hearing that horrible sound of the motor and the next thing was I was being pulled out of the car." The plaintiff was permanently injured. Several physicians testified to this effect. The plaintiff's testimony, in substance, was corroborated by her daughter, Mabel York.
Mabel York testified, in part: "Q. State whether or not after you left Albemarle and before the injury there was any conversation between your mother and yourself on the one hand and your father on the other? Q. Was there a conversation? Ans.: Yes. Q. What was said? Ans.: Mother told daddy to slow down and he didn't."
P. A. Kelly testified, in part: "Yes, I recall an occasion in that year, in December, 1933, when Mr. York purchased some tires for his Terraplane automobile. They were Kelly-Register tires, 6600 610. Yes, they were all four tires. The approximate mileage of the Terraplane automobile was 8,000 miles at the time that I put these tires on. I saw the car in October, 1934, ten months after I sold them. We sold the tires in December, 1933, and he had 13,000 miles on the Register tires then. He was driving on them at that time. At that time I was working at Rogers Tire Company. Q. Did you have any conversation with Mr. York at that time about the tires? Ans.: Well, this particular time Mr. York came in and filled up with gas and oil and also checked his *Page 698 
tires and battery. In other words, checked the car, and I called Mr. York's attention that his tires were getting slick — told him they were getting slick and I would like to sell him U.S. Royals. Q. What was the condition of the tires? Ans.: The fabric wasn't showing, but — That was in October, 1934. He had those tires in March, 1935. About every week Mr. York would come and have something done. He would leave the car and get it later, or his son would. Q. Did you have any further conversation with him during that period about the condition of the tires? Ans.: Yes, sir. He bought a battery from me in March, 1935, and I said, `You still got those tires, but you are almost to the fabric and I don't believe I would take any more chances." He said, `I don't know whether I like your tires, I will probably see you, but I can't buy the tires now.' Q. You told Mr. York that you didn't believe you would take any more chances with the tires? What did he say? Ans.: Well, he said, `I know you are right, but I am not in a position to buy the tires now.' (Cross-examination.) Yes, I made an examination of these tires. I checked them to see if the fabric was showing. The fabric wasn't showing but the tires were slick. I could stand and look at that tread and tell there was no nonskid on it. I can look at a tire and tell if it is slick, but I cannot tell if it is just down to the strip. Now if it was gone through the fabric I can see it from standing on the side. I could tell they were slick and the nonskid was gone."
C. V. York, Jr., testified, in part: "I was familiar with this automobile which was in this wreck, was turned over on 3 June, 1935. Kelly-Springfield tires were on the car at the time it was brought back from the wreck. They were put on the car in January, 1934. They were purchased from the Carolina Service Corporation. Mr. Kelly sold them. They were the same tires on it at the time of the wreck. . . . Q. Do you know how many miles those tires had been from the time they were purchased until the time of the wreck? Ans.: 24,000 miles."
C. K. Wishon testified, in part: "I recall that some time in the month of June, 1935, Mr. C. V. York, Jr., brought in an automobile of his father's. I examined the automobile. Q. I wish you would state to the court and the jury the condition of the tires? Ans.: The tires were practically worn out. Q. Will you describe their condition as nearly as you can? Ans.: Well, the tires were worn to the breakers in most of them and the tread worn off and part of them worn down to the breaker strippings." The defendant introduced no evidence.
The issues submitted to the jury and their answers thereto were as follows:
"1. Was the plaintiff, Mrs. Mabel A. York, injured by the negligence of the defendant, C. V. York, as alleged in the complaint? Ans.: `Yes.'
"2. What amount, if any, is the plaintiff entitled to recover of the defendant? Ans.: `$12,000.'" *Page 699 
The court below rendered judgment on the verdict. Defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.
In this jurisdiction a wife has the right to bring an action for actionable negligence against her husband. Roberts v. Roberts. 185 N.C. 566
(567); Shirley v. Ayers, 201 N.C. 51 (55); Jernigan v. Jernigan,207 N.C. 831.
In Harper v. R. R., 211 N.C. 398 (402), citing many authorities, it is said: "It is well settled in this jurisdiction that negligence on the part of a driver of a car will not ordinarily be imputed to another occupant unless such other occupant is the owner of the car and has some kind of control over the driver. They must be engaged in a joint enterprise or joint venture. Automobile driver's negligence is not, as a general rule, imputable to a passenger or guest."
The defendant introduced no evidence. At the close of plaintiff's evidence the defendant in the court below made a motion for judgment as in case of nonsuit. C. S., 567. The court below overruled the motion and in this we can see no error. The evidence which makes for plaintiff's claim, or tends to support her cause of action, is to be taken in its most favorable light for the plaintiff, and she is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom.
It is alleged in the complaint, and we think the evidence sustains the allegations: "That defendant negligently and carelessly drove his automobile at a high and dangerous speed; that he continued to negligently and carelessly drive his automobile at a high and dangerous speed in the face of and into a fast approaching storm and rain and into a sharp curve in the road. That he negligently and carelessly failed to equip his automobile with tires that were safe to drive, and did negligently drive his automobile with tires that were unsafe."
In Waller v. Hipp, 208 N.C. 117 (120), it is said: "There was evidence from which the jury could find that the skidding of the automobile was the result of the negligence of the defendant in driving an automobile with tires which he knew were worn out and slick, on a highway which was wet and slippery, at a rate of speed which, although not ordinarily unlawful under all the circumstances shown by the evidence. C. S., 2621 (45)." Butner v.Whitlow, 201 N.C. 749; Norfleet v. Hall, 204 N.C. 573; Taylor v.Rierson, 210 N.C. 185 (188-9). *Page 700 
The defendant in his answer denied negligence and set up the defense: "That the accident referred to was unforeseeable and unavoidable, but that if the defendant was in any manner negligent in the premises, which is again denied, then and in that event the plaintiff was also negligent in that she permitted, allowed, and acquiesced in the operation and driving of the said automobile in the manner in which it was driven at the time of said accident, with full knowledge of and opportunity of knowing the condition of said automobile, and that in making the said trip and in driving said automobile the defendant was acting in the joint interests and for the mutual benefit and pleasure of the plaintiff and the defendant; that if the defendant was negligent in the premises, which is specifically denied, then the said negligence of the plaintiff contributed to and was a proximate cause of said accident, which contributory negligence of the plaintiff is hereby pleaded as an additional defense to and in bar of this action."
There was no sufficient evidence to show that plaintiff knew, or by the exercise of due care had reasonable ground to believe, that the tires were slick and worn out. Plaintiff testified, on cross-examination by defendant, "I don't know anything about the condition the car was in." There was no evidence of a joint enterprise or that plaintiff had any control over the car which defendant was driving. Charnock v. Refrigerating Co., 202 N.C. 105
(106). Plaintiff was a passenger or guest in the car. There was no sufficient evidence to submit an issue of contributory negligence to the jury. Mabel York testified, in part: "Mother told daddy to slow down and he didn't." We do not think any of these defenses can be sustained under the facts and circumstances of this case.
Mabel York was recalled. An "adjuster," a Mr. Greene, on 2 July, 1935, shortly after the accident, had gone to her and gotten a statement from her. On cross-examination she testified, in part: "Q. You don't now recall having said that Mr. York slowed down? Ans.: No, I don't. Q. You don't deny that you said it at that time, do you? Ans.: No. Q. Miss York, I wish you would please read to the jury the statement which you admit you signed and which bears the date of 2 July, 1935, relative to the time, place, and manner in which this accident occurred and the conversation between yourself and your mother at the time? Objection by plaintiff; sustained; exception. If permitted to answer the foregoing question the witness would have answered and read the statement as follows: (Statement set forth.) (By plaintiff's counsel): We repeat that we have no objection to defendant's offering the statement in evidence. (By defendant's counsel): I repeat, plaintiff's counsel says he has no objection to our offering the statement, and I repeat that we have no objection to his offering writing of his witness *Page 701 
signed by her. (By the court): The court rules that either side may introduce the statement, and that it is apparent that neither side is going to. (Redirect examination.) I was at home alone when I signed it." In the statement she says: "It was raining heavily in front of us and that father reduced his speed." The statement would have shown exactly what was elicited on the prior cross-examination that she did not deny about putting in the statement about her father "slowed down." This made the written statement immaterial.
In Lockhart's N.C. Handbook of Evidence (2nd Ed.), part of sec. 276, citing authorities, is the following: "That documents containing substantive evidence could not be introduced while cross-examining a witness when an opportunity was given to introduce the document at the proper time, that new substantive evidence could not thus be brought out if opportunity was given to introduce it at another time, and that impeaching evidence brought out on cross-examination must be confined to its impeaching effect and not be used as substantive evidence."
The defendant contends that certain remarks on the argument by plaintiff's attorney to the jury were improper and prejudicial. The record discloses: "No exception was taken at the trial by defendant, but in its case on appeal defendant excepts." It is well settled that the exception must be entered at the time. C. S., 643; Borden v. Power Co., 174 N.C. 72
(73); Rawls v. Lupton, 193 N.C. 428 (431). "(By Mr. Royall): I was just referring to Mr. Greene. I think it is perfectly proper — `Gentlemen, they did not put on the man that took the statement. Didn't put him on the stand.' Defendant objects; objection overruled; defendant excepts." The argument was perfectly legitimate, at least in the sound discretion of the court below. The "adjuster," although not a party to the action in obtaining the statements and what it contained, was inquired into by defendant. The charge made as to the method of obtaining the statements and not refuted by him was a "pregnant circumstance."
In criminal cases the defendant is competent, but not compellable to testify. N.C. Code, 1933 (Michie), sec. 1799. In civil cases the failure of the defendant to take the stand to testify as to facts peculiarly within his knowledge and directly affecting him is "a pregnant circumstance" for the jury's consideration. Hudson v. Jordan, 108 N.C. 10 (12). As pointed out in Goodman v. Sapp, 102 N.C. 477, the earlier cases declared that "the mere fact that a party, plaintiff or defendant, did not testify in his own behalf was not the proper subject of comment," but that case held that this must be left ordinarily to the sound discretion of the trial judge. However since the Hudson case, supra, the principle of that case has been frequently approved. In Powell v. Strickland, 163 N.C. 394 (402), it is pointed out that the *Page 702 
jury should presume nothing against him from the bare failure of a party in a civil action to testify, but "when he is called upon to explain, the case is different." In In re Hinton, 180 N.C. at p. 212, Walker, J., declares: "We are at a loss to conceive why propounders did not take the witness stand and refute the personal charges made against them unless they knew them to be true and unanswerable, or felt that they could not overcome the evidence of their truth offered by the caveators, or did not wish to undergo the ordeal of a severe cross-examination, which might disclose to the jury how unfeelingly they had treated the caveators who, because of their helpless and hopeless condition, were entitled to their care and protection instead of being the victim of their cupidity. There can be no wonder that the verdict was against them. Evidence of this kind was competent for the jury to consider, for when one can easily disprove a charge by testimony within his control, and which he can then produce, and fails to do it, it is some proof that he cannot refute the charge." The rule of the Hudson case, supra, has been repeatedly approved and followed in recent cases decided by this Court. See Walker v. Walker, 201 N.C. 183
(184); Puckett v. Dyer, 203 N.C. 684 (690); Maxwell v. Distributing Co.,204 N.C. 309 (316).
N.C. Code, supra, sec. 2621 (46), in part is as follows: "(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing. (b) Where no special hazard exists the following speed shall be lawful, but any speed in excess of said limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful: . . . (4) Forty-five miles per hour under other conditions."
The court below charged: "Now, gentlemen of the jury, if the plaintiff shall have satisfied you by the greater weight of the evidence that the defendant was operating his car at a speed in excess of 45 miles an hour upon the occasion in question, the court instructs you that that is evidence from which you may, but are not required to, find that he was violating the law. If you shall not so find, then, gentlemen, that would not constitute negligence in so far as that feature of the case is concerned, but if you should so find, then the court instructs you that would constitute negligence per se."
Under the facts and circumstances of this case we can see no prejudicial error in the charge. From the evidence, under the conditions then existing and the speed under the hazard existing, over 45 miles an hour is unlawful and therefore negligence per se.
In Albritton v. Hill, 190 N.C. 429 (430), we find: "This and other evidence which we need not set out in detail (C. S., 2616), tended to show a breach of more than one statute. A breach of either is negligence *Page 703 per se; the causal relation between the alleged negligence and the injury being, of course, a question for the jury. . . . (Citing authorities.) In reference to concurrent negligence we have held that where two proximate causes contribute to an injury the defendant is liable if his negligent act brought about one of such causes. Mangum v. R. R., 188 N.C. 689; Hinnantv. Power Co., 187 N.C. 288; White v. Realty Co., 182 N.C. 536; Wood v.Public Corporation, 174 N.C. 697; Harton v. Telephone Co.,141 N.C. 455."
The objections and assignments of error as to the answers of certain physicians who gave their opinion as to plaintiff's injuries cannot be sustained. Keith v. Gregg, 210 N.C. 802 (808).
There are numerous exceptions and assignments of error made on the trial and to the charge which cannot be sustained. We have examined defendant's brief and additional authorities, but the law is well settled in this State in matters of this kind. On the whole record we find no prejudicial or reversible error. The charge given covered every aspect of the case and the law applicable to the facts, and compiled with C. S., 564. We repeat, as said in Davis v. Long, 189 N.C. 129 (137): "The case is not complicated as to the law or facts. The jurors are presumed to be men of `good moral character and sufficient intelligence.' They could easily understand the law as applied to the facts."
In the judgment of the court below we find
No error.