Matthias, J.
The question presented is stated by the plaintiff as follows:
“May the wife of a deceased member of a voluntary unincorporated association maintain an action in tort against the association for a tort committed against her during her husband’s lifetime?”
It is the position of the defendants that a so-called “group suit” for tort cannot be maintained against a voluntary unincorporated association unless all members are included and that a wife cannot maintain an action in tort against her husband.
In the consideration of the defendants ’ first proposition, it is to be noted that the petition sets forth no facts which show the relationship between the plaintiff’s hubsand and the defendant lodge other than that he was a member of the association; that “the members of said association are too numerous for all of them to be joined as defendants”; and that the defendants named are joined to represent the association.
This raises a procedural question which would require a dismissal of the plaintiff’s petition if the lower court erroneously failed to sustain the demurrer on that ground.
The defendant lodge is designated as an “unincorporated fraternal benefit society,” and judgment is asked against the lodge but no judgment is sought, against the defendant officers. It is urged that this *110 is a suit against the lodge as an entity, which is not authorized under the statutes of this state.
An examination of the various statutes discloses that there is no general statute under which specific authority is given to such lodges to sue and be sued as entities; they are instead treated as groups of individuals engaged in a common purpose (Koogler et al., Trustees, v. Koogler, 127 Ohio St., 57, 186 N. E., 725), and the general rule is that suits against unincorporated associations must be brought against the members thereof as individuals, collectively and conjointly (3 Ohio Jurisprudence, 758, Section 8). However Section 13437-8, General Code, provides that in indictments or informations it is sufficient for the purpose of identifying any group or association of persons, not incorporated, to use the proper name of such group (State v. Fremont Lodge, L. O. O. M., 151 Ohio St., 19, 84 N. E. [2d], 498). Likewise, Section 10060, General Code, relating to religious and benevolent societies, provides that “such an association or society may sue or be sued, answer or be answered unto, plead or be impleaded in any court in this state.”
Although these statutes are not controlling in the instant case, since the petition sets forth that the members of the association are too numerous to be joined as defendants, Section 11257, General Code, becomes applicable. This section provides: “When the question is one of a common or general interest of many persons, or the parties are very numerous, and [it] is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all.”
Giving full import to the facts pleaded in the petition, the demurrer of the defendants thereby admitting that the parties herein are too numerous to be joined *111 as defendants, the procedural question must be resolved in favor of the petition, on authority of Section 11257, General Code, supra.
The contention that the petition is demurrable on the ground that the suit is in effect one by a wife against her husband and that “a wife cannot maintain an action in tort against her husband” presents an issue not previously directly decided by this court. It must be conceded that the allegations of the petition do include the plaintiff’s husband and all others similarly situated as defendants by representation.
The case of State v. Phillips, 85 Ohio St., 317, 97 N. E., 976, 40 L. R. A. (N. S.), 142, involved a situation where the defendant, Phillips, was indicted for larceny of $760 from her husband, taken from a safe in their residence. The Court of Common Pleas directed a verdict of not guilty on the ground that the indictment did not charge a crime. That judgment was affirmed by the Supreme Court upon exceptions by the prosecuting attorney. This court held in the syllabus:
“The common-law rule that neither husband nor wife can be prosecuted for larceny of the goods of the other, is not abrogated by Sections 7995 to 8004, General Code, defining the rights and liabilities of husband and wife, nor by Section 12447, General Code, defining larceny. An intention of the Legislature to abolish an established rule of the common law and to create a crime where none existed before, must clearly and unmistakably appear.”
Implications may arise from that decision based upon the following language of Davis, C. J., in the opinion at page 322:
‘ ‘ Common-law rules have usually been founded upon sound reason and considerations of public policy; and out of this fact has grown the safe maxim that statutes *112 derogating from the common law should be strictly construed. Keeping this maxim in mind, we have found nothing in the statutes of Ohio, and nothing has been pointed out to us, which would justify a conclusion that the General Assembly expressly or impliedly abrogated the common-law rule that neither husband nor wife can be prosecuted for a larceny of the goods of the other; and much less an intention to do so. Indeed we doubt that any member of that body had in contemplation such a result when he voted for the statutes which protect the individual rights of married people. The Legislature was contemplating the expressed purpose of the statutes, and that only. They were not at that time considering crimes and criminal procedure; and surely they cannot be presumed to have intended a thing which they did not clearly express and which is fraught with such far-reaching and radical consequences to the law of the domestic relations, for the abrogation of the doctrine of the legal unity of husband and wife, when pushed to its logical conclusion, would not only create crimes where there were none before, but would also authorize a husband or wife to maintain civil actions for tort against the other, such as actions for personal injuries, assault, false imprisonment, or slander (15 Am. & Eng. Ency. Law, 2 Ed., 857) thus multiplying a hundredfold the unhappy differences which have to be settled in the divorce courts. We cannot assume that the Legislature intended this without very clear evidence of such an intention in the language of the statutes.”
However, the fact must be noted, as stated in the opening sentence of the opinion, that that case presented only “the concrete question whether a wife can be prosecuted for larceny, when she has taken and converted to her own use personal property of *113 her husband.” It does not in any way deal with the right of a wife to recover damages for a tort committed by her husband, which is the precise question presented in this case.
At common law a wife can not maintain a tort action against her husband. The historical reasons for the common-law rule are so fully and clearly stated in Prosser on Torts, 898, that we quote therefrom at length:
“Any tort action between husband and wife encountered at the outset the common-law doctrine of the legal identity of the two. It has been said, whether humorously or not, that at common law husband and wife were one person, and that person was the husband — which is not strictly accurate, since the criminal law, at least, regarded them as separate individuals, and the wife could be named as a party to a civil action, even though her husband must be joined with her, if he were alive when suit was brought.' But as to her personal and property rights, the very legal existence of the wife was regarded as suspended for the duration of the marriage, and merged into that of the husband, so that she lost the capacity to contract for herself, or to sue or be sued without joining the husband as a plaintiff or defendant. The husband acquired the right to possession and use of his wife’s real and personal property, and he was entitled to all of her chóses in action, provided that he ‘reduced them to possession’ during marriage by some act by which he appropriated them to himself, such as collecting the money or obtaining judgment in a suit in his own name. Tn turn he became liable for the torts of his wife, committed either before or during the marriage. It is perhaps idle to speculate at this late date as to how far the historical basis of these rules is a mixture of the Bible and medieval metaphysics, the position of the father of the family in Roman law, the natural- *114 law concept of the family as an informal unit of government with the physically stronger person at the head, or the property law of feudalism.
“A combination of all these incidents made it impossible to maintain a tort action between husband and wife. If the man were the tort-feasor, the woman’s right would be a chose in action which the husband would have the right to reduce to possession, and he must be joined as a plaintiff against himself and the proceeds recovered must be paid to him; and if the tort involved property, the wife had no right of possession to support the action. If the wife committed the tort, the husband would be liable to himself for it, and must be joined as a defendant in his own action. As a result, it was held that neither spouse could maintain an action against the other for either a personal or a property tort, whether it was committed before or during marriage; and the action was not maintainable even after divorce, which came late in the English law, after these rules were well established. ’ ’
Every state has enacted statutes which have changed’ the common-laAV rule and have assigned to a married woman a separate legal identity and secured for her a separate legal estate in her own property. These statutes differ widely in their language and have been construed by the courts in some states by applying the rule of strict construction because of being in derogation of the common law, but in other states they have been construed liberally or at least so construed as to give reasonable effect to the evident intent and purpose of the legislators.
Many statutes have been enacted by the General Assembly of this state conferring upon married women the rights forbidden to them under the common law. The following statutes are illustrative:
*115 Section 7997. “The husband must support himself, his wife, and his minor children out of his property or by his labor. If he is unable to do so, the wife must assist him so far as she is able.”
Section 7998. “Neither husband nor wife has any interest in the property of the other, except as mentioned in the next preceding section, the right to dower and to remain in the mansion house after the death of either, as provided by law; and neither can be excluded from the other’s dwelling, except upon a decree or order of injunction made by a court of competent jurisdiction.”
Section 7999. “A husband or wife may enter into any engagement or transaction with the other, or with any other person, which either might if unmarried; subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other.”
Section 8001. “A married person may take, hold and dispose of property, real or personal, the same as if unmarried.”
Section 8002. “Neither husband nor wife, as such, is answerable for the acts of the other.”
Section 11245. “A married woman shall sue and be sued as if she were unmarried, and her husband be joined with her only when the cause of action is in favor of or against both.”
Section 11591. “When a married woman sues or is sued, like proceedings shall be had and judgment rendered and enforced as if she were unmarried. Her property and estate shall be liable for a judgment against her, but she shall be entitled- to the benefits of all exemptions to heads of families.”
It is the fundamental law of this state that every person is entitled to the protection afforded by the courts. Section 16 of Article I of the state Constitution provides in part:
*116 “All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.”
In conformance with this provision, this court held in the case of Williams, an Infant, v. Marion Rapid Transit, Inc., 152 Ohio St., 114, 87 N. E. (2d), 334, 10 A. L. R. (2d), 1051, as follows:
“Injuries wrongfully inflicted upon an unborn viable child capable of existing independently of the mother are injuries ‘done him in his * * * person’ within the meaning of Section 16, Article I of the Constitution, and, subsequent to his birth, he may maintain an action to recover damages for the injury so inflicted.”
Obviously this provision of the Constitution is broad and all-inclusive, and a married woman would have a right “in due course of law” to maintain an action for her injuries against any tort-feasor. It would seem that express statutory prohibition or limitation upon a right to recover, similar to those prescribed by Section 6308-6, G-eneral Code (guest statute), would be necessary to limit such right.
All the statutory provisions evince a clear purpose to eliminate the barriers erected by the common law which denied to married women the right to prosecute actions for their sole benefit. No statute expressly prohibits actions by a wife to recover damages from her husband for personal injuries inflicted upon her by him. Such a statute would constitute an exception to the above-quoted statutes, for those provisions are in general terms and are all-inclusive in their purpose and have the effect of superseding the common-law doctrine of the legal identity of husband and wife. A complete change of policy is unmistakable and should not be disregarded.
*117 The general disqualification which the common law placed on the testimony of a wife against her husband or a husband against his wife has been removed. See Section ■ 11494, General Code. Section 13444-2, General Code, relating to criminal procedure, provides in part as follows:
“Husband and wife shall be competent witnesses to testify in behalf of each other in all criminal prosecutions, and to testify against each other in all actions, prosecutions, and proceedings for personal injury of either by the other * * *. Such interests, conviction or relationship may be shown for the purpose of affecting the credibility of such witness. Husband or wife shall not testify concerning a communication made by one to the other, or act done by either in the presence of the other during coverture, unless the communication was made or act done in the known presence or hearing of a third person competent to be a witness, or in the case of personal injury by either the husband or wife * * (Emphasis supplied.)
One must assume that the language employed has the purpose of supplementing other sections giving to a married woman the right to prosecute actions at law for her own benefit.
In the recent case of Signs, a Minor, v. Signs, 156 Ohio St., 566, 103 N. E. (2d), 743, the question pre7 sented was whether a minor child may bring a tort action against a partnership of which his father is a member. The argument was made in that case that the prosecution of such an action disturbs the domestic peace and harmony of the family and is contrary to public policy and that, therefore, such actions should not be maintainable. It was pointed out in the opinion by Stewart, J., that, in view of the almost universal recognition of the right of an unemancipated child to maintain an action against his parents for the protec *118 tion of his property rights, to hold that an unemancipated child is utterly without redress for injuries to his person inflicted by a parent would be absurd. The court held, as stated in the syllabus: “A parent in his business or vocational capacity is not immune from a personal-tort action by his unemancipated minor child.”
In that case the court refused to follow the rule adopted in the majority of the states that actions are not permissible between parent and minor child for personal torts and recognized instead the tendency of modern decisions to liberalize the rule.
The modern tendency on the part of the courts to extend so far as permitted by statutes the right of a husband or wife, to recover from each other in actions at law or equity is discussed in Prosser on Torts, supra, at page 901, as follows:
“So far as personal torts are concerned, however, the majority of the courts have refused to construe the statutes to alter the common-law rule. * * * In some cases this construction no doubt has been forced by the language of the statute itself; but in by far the greater number it has been read into a statute which is silent on the subject of actions for personal torts.
“The courts which follow this majority view have buttressed their conclusion by inventing new arguments, not found in the early cases, for denying the remedy. Apart from siare decisis or judicial inertia, and the policy of strict construction of statutes changing the common law, it has been said that each spouse has remedy enough in the criminal and divorce laws —which obviously is untrue, since neither compensates for the damage done, or covers all the torts that may be committed. * * * The chief reason relied upon by all these courts, however, is that personal tort actions *119 between husband and wife would disrupt and destroy the peace and harmony of the home, which is against the policy of the law. This is on the bald theory that after a husband has beaten his wife, there is a state of peace and harmony left to be disturbed; and that if she is sufficiently injured or angry to sue bim for it, she will be soothed and deterred from reprisals by denying her the legal remedy — and this even though she has left him or divorced him for that very ground, and though the same courts refuse to find any disruption of domestic tranquility if she sues him for a tort to her property, or brings a criminal prosecution against him.”
See Crowell v. Crowell, infra, where it is stated in the opinion:
“Whether a man has laid open his wife’s head with a bludgeon, put out her eye, broten her arm, or poisoned her body, he is no longer exempt from liability to her on the ground that he vowed at the altar to ‘love, cherish, and protect’ her.”
Many of the cases which deny this right of action to recover for personal injuries to a wife are founded on the case of Thompson v. Thompson, 218 U. S., 611, 54 L. Ed., 1180, 31 S. Ct., 111, decided by the Supreme Court of the United States on December 12,1910. That case construed statutes of the District of Columbia which provided, in part, that “married women shall have power * * * to sue separately for the recovery, security, or protection of their property, and for torts committed against them, as fully and freely as if they were unmarried * *
The Supreme Court held that that statute did not give the wife a right to recover damages from her husband for an assault and battery committed by him upon her person. That case has been repeatedly cited by the courts refusing recovery, but the forceful dis *120 senting opinion by Justice Harlan (Justices Holmes and Hughes concurring therein) takes violent exception to the strict construction of the statute by the majority.
A strong minority of the more recent cases hold in favor of recovery by a wife for intentional injuries inflicted by her husband, the opinions in which cases are very persuasive. Among those cases are the following:
Johnson v. Johnson, 201 Ala., 41, 77 So., 335; Brown v. Brown, 88 Conn., 42, 89 A., 889, 52 L. R. A. (N. S.), 185, Ann. Cas., 1915D, 70; Lorang v. Hays, 69 Idaho, 440, 209 P. (2d), 733; Crowell v. Crowell, 180 N. C., 516, 105 S. E., 206, 181 N. C., 66, 106 S. E., 149; Prosser v. Prosser, 114 S. C., 45, 102 S. E., 787; Fiedler v. Fiedler, 42 Okla., 124, 140 P., 1022, 52 L. R. A. (N. S.), 189.
In numerous cases the courts have held that a wife may recover for injuries inflicted upon her by the negligence of her husband, some of which are:
Katzenberg v. Katzenberg, 183 Ark., 626, 37 S. W. (2d), 696; Roberson v. Roberson, 193 Ark., 669, 101 S. W. (2d), 961; Ginsberg v. Ginsberg, 126 Conn., 146, 9 A. (2d), 812; Bushnell v. Bushnell, 103 Conn., 583, 131 A., 432, 44 A. L. R., 785; Rains v. Rains, 97 Colo., 19, 46 P. (2d), 740; Miltimore v. Milford Motor Co., 89 N. H., 272, 197 A., 330; Roberts v. Roberts, 185 N. C., 566, 118 S. E., 9, 29 A. L. R., 1479; Alberts v. Alberts, 217 N. C., 443, 8 S. E. (2d), 523; York v. York, 212 N. C., 695, 194 S. E., 486; Bogen v. Bogen, 219 N. C., 51, 12 S. E. (2d), 649; Fitzmaurice v. Fitzmaurice, 62 N. D., 191, 242 N. W., 526; Scotvold v. Scotvold, 68 S. D., 53, 298 N. W., 266; Courtney v. Courtney, 184 Okla., 395, 87 P. (2d), 660; Fontaine v. Fontaine, 205 Wis., 570, 238 N. W., 410.
Particular attention is directed to the case of Court *121 ney v. Courtney, supra, decided by the Supreme Court of Oklahoma, October 25, 1938. Davison, J., reviewed previously decided cases exhaustively and compared them with the statutes in force in the various states. He found that the decisions in many of the cases cited, which follow the common-law rule, merely applied statutes enacted in those states which prohibit the maintenance of such actions and concluded that the apparent weight of authority denying the right of action is, therefore, not as preponderant as the number of cases would indicate.
In Ohio, the Constitution and the pertinent statutes have the effect of so modifying the common-law rule as to authorize the maintenance of the action by the plaintiff against her husband and consequently against the defendants.
We hold, therefore, that the Court of Appeals erred when it affirmed the judgment of the Court of Common Pleas.
The judgment is reversed and the cause remanded to the Court of Common Pleas for further proceedings.

Judgment reversed and cause remanded.

Weygandt, C. J., Zimmerman, Stewart, Middleton, Taft and Hart, JJ., concur.